[No. 18301-7-III.   Division Three.   February 17, 2000.]
*In the Matter of the Personal Restraint of* JULIAN RANGEL, *Petitioner.*

*Janet G. Gemberling*, for petitioner.

*Jeffrey C. Sullivan, Prosecuting Attorney*, and *Lauri M. Boyd, Deputy*, for respondent.

KURTZ, C.J. — Julian Rangel seeks relief from personal

restraint imposed following his jury convictions on ten counts of first degree assault.[1] He contends the court sentenced him incorrectly to consecutive terms. He also asserts that CrR 7.2(d) required the court to enter findings of fact and conclusions of law with respect to his sentences, and it did not do so. This court appointed counsel to address the propriety of the consecutive sentences. Counsel raises, as additional issues, whether the jury instructions subjected Mr. Rangel to double jeopardy, and whether the evidence was sufficient to sustain his convictions.[2]

1. Consecutive Sentences.

RCW 9.94A.400(1)(b) provides that the court shall sentence a defendant convicted of two or more serious violent offenses arising from "separate and distinct" criminal conduct to consecutive sentences. The definition of "serious violent offense" includes first-degree assault. RCW 9.94A.030(31).

At issue here is the meaning of the phrase "separate and distinct" criminal conduct. Mr. Rangel's ten assault convictions involved six different victims. Four of the victims were members of a rival gang. Mr. Rangel fired his gun at them as his vehicle passed theirs in downtown Yakima. The victims' car crashed, and three other young men stopped to help them. Mr. Rangel's vehicle turned around, and he fired his weapon as he approached again.

The State charged Mr. Rangel with four counts of first degree assault, based upon the initial attack, and six counts of attempted first degree murder or, alternatively, first degree assault, based upon the second attack. (One of the four occupants of the fired-upon vehicle had fled the scene after the crash and before Mr. Rangel returned.) The court instructed the jury that first degree assault is a lesser

---

[1]This court affirmed Mr. Rangel's convictions by unpublished opinion, *State v. Rangel*, No. 15035-6-III (Wash. Ct. App. Oct. 30, 1997).

[2]Counsel raised these issues more than one year after Mr. Rangel's judgment and sentence were final, which ordinarily results in a bar to collateral attack. *See* RCW 10.73.090. However, the additional issues fall within the statutory exceptions to the one-year rule. *See* RCW 10.73.100(3) and (4).

included offense of attempted first degree murder. The jury convicted Mr. Rangel of first degree assault as to all ten counts. At sentencing, the court determined pursuant to RCW 9.94A.400(1)(b) that the ten convictions were based upon separate and distinct criminal conduct and, therefore, ordered Mr. Rangel to serve the sentences for the ten convictions consecutively.

Clearly, seven of Mr. Rangel's convictions are for separate and distinct criminal conduct because they involved different victims—the four persons in the vehicle in the first attack and the three young men who stopped to help and were present at the scene when Mr. Rangel returned and opened fire. *See State v. Wilson*, 125 Wn.2d 212, 220, 883 P.2d 320 (1994); *State v. Godwin*, 57 Wn. App. 760, 763-64, 790 P.2d 641, *review denied*, 115 Wn.2d 1006 (1990). The question is whether the assaults Mr. Rangel committed when he fired at the three persons remaining at the scene at the time of the second attack, are separate and distinct from the assaults he committed against those same persons in the first attack.

In *State v. Tili*, 139 Wn.2d 107, 985 P.2d 365 (1999), the Washington Supreme Court used the factors that define "same criminal conduct," as set forth in RCW 9.94A.400(1)(a), to determine that the defendant's conduct in committing three different rapes of the same victim, was not "separate and distinct." *Id.* at 122. Specifically, the defendant's "unchanging pattern of conduct, coupled with an extremely close time frame, strongly supports the conclusion that his criminal intent, objectively viewed, did not change from one penetration to the next." *Id.* at 124.

However, in reaching its conclusion, *Tili* distinguished *State v. Grantham*, 84 Wn. App. 854, 932 P.2d 657 (1997). *Tili* observed that the evidence in *Grantham* supported a conclusion that the defendant's criminal conduct ended with the first rape. "Grantham, upon completing the act of forced anal intercourse, had the time and opportunity to pause, reflect, and either cease his criminal activity or proceed to commit a further criminal act." *Tili*, 139 Wn.2d

at 123 (quoting *Grantham*, 84 Wn. App. at 859.). *Tili* cited the facts of *Grantham*, as follows: "After raping his victim, Grantham stood over her and threatened her not to tell. He then began to argue with and physically assault his victim in order to force her to perform oral sex. Thus, Grantham was able to form a new criminal intent before his second criminal act because his *'crimes were sequential, not simultaneous or continuous.'* "

■ Here, Mr. Rangel, while a passenger riding in one vehicle, fired shots from his vehicle into another vehicle. The second vehicle crashed, and Mr. Rangel's vehicle drove on, turned around, and approached again. Mr. Rangel then opened fire a second time. Like the defendant in *Grantham*, Mr. Rangel was able to form a new criminal intent before his second criminal act because his crimes were sequential, not simultaneous or continuous. Therefore, his conduct was separate and distinct, and the trial court properly sentenced him to consecutive sentences under RCW 9.94A.400(1)(b).

We therefore uphold the superior court's imposition of consecutive sentences for Mr. Rangel's offenses.

2. CrR 7.2

■ CrR 7.2 provides that the sentencing court shall supply the Sentencing Guidelines Commission with its written findings of fact and conclusions of law for every felony sentence that *departs from the applicable standard range sentence.* The court rule does not apply to Mr. Rangel's case. The fact Mr. Rangel's standard range sentences ran consecutively pursuant to RCW 9.94A.400(1)(b) does not convert them to exceptional sentences. *Cf. State v. Linderman*, 54 Wn. App. 137, 139, 772 P.2d 1025, *review denied*, 113 Wn.2d 1004 (1989) (*Unless* the offenses fall under the exceptions listed in subsection (1)(b) or subsection (3), consecutive sentences imposed for current offenses constitute exceptional sentences).

3. Double Jeopardy.

Mr. Rangel next contends the court's instructions

violated the prohibition against double jeopardy by permitting the jury to convict him of two assaults with respect to each of the occupants of the car, without requiring it to base those convictions on separate facts. The State had charged him with separate assaults for the gunshots he fired at the vehicle's occupants *before* it crashed, and with separate assaults for the gunshots he fired at the occupants of the vehicle *after* it crashed. According to Mr. Rangel, the court's instructions did not maintain this distinction.

■■■ However, the court also instructed the jury that "[c]ounts I, II, III, V, and VI ar[o]se out of the conduct and events occurring at Fosseen's, *after* the car crashed into Fosseen's," and "[c]ounts VII, VIII, IX, and X ar[o]se out of the conduct and events occurring *prior* to the time the car crashed into Fosseen's." (Emphasis added.) (Instruction 3). The instructions, read as a whole, do not permit more than one conviction for any single act. *See State v. McDonald*, 138 Wn.2d 680, 690, 981 P.2d 443 (1999).

4. Sufficiency of the Evidence.

Mr. Rangel argues the evidence is insufficient to support his convictions for two counts of first-degree assault upon Felipe Arriagua. Instead, he asserts the evidence indicates Mr. Arriagua was not present at the scene when Mr. Rangel fired the shots after the crash. He bases his argument on the testimony of John Hatcher, one of the men who came to the aid of the persons in the vehicle. According to Mr. Rangel, Mr. Hatcher testified he saw two Hispanic men on the sidewalk after the crash, but *only one of the men returned to the vehicle with him*. Mr. Rangel infers that the one who did not return was Mr. Arriagua, since Filipe Anguiano testified he fled immediately after the crash.

However, Mr. Hatcher's testimony is not as Mr. Rangel represents. Rather, Mr. Hatcher testified he saw two Hispanic men "calling us over." He also testified that the Hispanic man next to him (Mr. Perez Mendoza) was shot when Mr. Rangel returned in his vehicle. Mr. Hatcher did *not* testify that the other man (Mr. Arriagua) had left the scene. The jurors could reasonably infer that both men

were still there. This reasonable inference supported the jury's finding that Mr. Rangel assaulted Mr. Arriagua in his second round of shots. *See State v. Green*, 94 Wn.2d 216, 616 P.2d 628 (1980).

Mr. Rangel also contends the evidence is insufficient to support his convictions for assaulting Mr. Hatcher and Jason Shoemaker, two of the three men that came to the aid of the crashed vehicle's occupants. He argues these two men were mere bystanders; i.e., that he had no intent to harm them, nor did he harm them. *See Wilson*, 125 Wn.2d at 218. The court rejected this argument in Mr. Rangel's direct appeal, and it will not reconsider it here. *See In re Personal Restraint of Benn*, 134 Wn.2d 868, 885-86, 952 P.2d 116 (1998).

Accordingly, Mr. Rangel's personal restraint petition is dismissed pursuant to RAP 16.11(b).

SWEENEY and BROWN, JJ., concur.

After modification, further reconsideration denied March 28, 2000.