[No. 23163-8-II. Division Two. November 3, 2000.]

THE STATE OF WASHINGTON, *Respondent*, v. CLAUDE ALLEN PRICE, JR., *Appellant*.

846

848

*Thomas E. Doyle, Robert M. Quillian, Patricia A. Pethick,* and *Stephanie C. Cunningham,* for appellant (appointed counsel for appeal).

*Edward G. Holm, Prosecuting Attorney,* and *Mark Thompson, Deputy,* for respondent.

BRIDGEWATER, J. — Claude Allen Price, Jr. appeals multiple convictions, claiming that: (1) firing a gun into a car cannot be a substantial step toward commission of murder; (2) four convictions for attempted murder of two victims should not be served consecutively; (3) the firearm enhance-

ments should run concurrently; (4) the jury instructions were erroneous; and (5) he suffered ineffective assistance of counsel for counsel's failure to object to all counts being served consecutively. We affirm the convictions, but remand for resentencing with regard to the firearm enhancements on Counts VIII, IX, and XI.

Price stole Johnson's 1992 Silverado pickup. Johnson attempted to stop the theft and Price bumped Johnson with the truck, knocking him to the ground. Later that evening, Price, his friend Reade, and two women stopped at a tavern where Reade tried to steal a truck parked outside. The group next went to a shopping mall, where Reade walked around the parking lot looking for a car to steal. Still unsuccessful, the foursome next stopped at a gas station in the stolen truck, where Reade tried again to steal a vehicle. At 10:30 P.M., Aleta Nakano, driving by the gas station with her boyfriend, Larry Hooper, noticed Johnson's truck slow and come to a stop in the middle of the road. Nakano then saw Reade exit the passenger's side of the pickup and jump out into the parking lot of the gas station.

Next, Nakano observed Reade climb into an unattended idling Chevrolet pickup and begin to drive away from the gas station. The owner of the vehicle returned and Reade ran away (he did not return to the Silverado). Hoping to get the Silverado's license number, Nakano followed the truck and pulled off the road behind the truck when it stopped and parked in a gravel area on Deschutes Parkway. Price exited the driver's side holding a gun and he pointed it at the windshield of Nakano's vehicle.

Nakano and Hooper then ducked and drove off. Nakano heard a bang to the right side of her car. This bang was a single shot fired by Price that lodged in the passenger's headrest. The Silverado followed her. Nakano, driving as fast as she could to get away, drove down Deschutes Parkway, onto the freeway on-ramp, and onto northbound Interstate 5. The Silverado pursued Nakano and Hooper down the on-ramp, onto the interstate, and pulled up alongside her vehicle. The pair ducked, and next heard two

gunshots. The Silverado "shot off into the fast lane" and Nakano and Hooper quickly exited the interstate and drove to the Olympia Police Department. Report of Proceedings (RP) 102, 104-05. Later, the police found bullet holes in the passenger side window, the driver's door, and a bullet lodged in the passenger seat headrest.

At approximately 11:00 P.M. that same evening, Officer Charlie Lindsay, in a marked patrol car, intercepted the Silverado after it ran a red light. From the license plate, Officer Lindsay knew the Silverado had been reported as stolen. He activated his emergency lights and siren and pursued the Silverado for a mile and a half at speeds ranging from 40 to 90 mph. The Silverado crashed, hitting a large rock wall. When Officer Lindsay pulled Price from the vehicle, Price was swinging his arms and kicking at Officer Lindsay. The gun seized from the truck driven by Price was registered to Sven White, Price's roommate. White had reported it stolen earlier that month.

Price rested at trial without presenting evidence. Price pleaded guilty to unlawful possession of a firearm before trial. The jury returned verdicts of guilty on: (1) the attempted first degree murder of Nakano (Count I) and Hooper (Count II) on Deschutes Parkway; (2) the attempted first degree murder of Nakano (Count III) and Hooper (Count IV) on Interstate 5; (3) theft of a firearm; (4) assault in the second degree; (5) attempted theft in the first degree; (6) attempting to elude a police vehicle; (7) assault in the third degree; (8) and possession of stolen property. The jury also found Price was armed with a firearm during the commission of the offenses.

The trial court sentenced Price to a standard range for each count plus firearm enhancements for Counts I-IV, XIII, IX, and XI. The sentences for four attempted murder charges (Counts I-IV) were imposed consecutively pursuant to RCW 9.94A.400(1)(b). The trial court imposed the sentences on Counts I-IV to run consecutively to each other because it found that the two shooting incidents constituted "separate and distinct criminal conduct." Pursuant to RCW

9.94A.310(3), the firearm enhancements ran consecutively to each other and to the base crimes for each underlying offense. This resulted in a total sentence of 1,217 months.

## I. ATTEMPTED FIRST DEGREE MURDER

The State charged Price in Counts I-IV with attempted first degree murder. Counts I and III named Nakano (the driver) as the victim, and Counts II and IV named Hooper (the passenger) as the victim. Counts I and II stemmed from the shooting on Deschutes Parkway; Counts III and IV related to the second shooting on Interstate 5. Price argues that his actions did not constitute attempted murder toward each separate victim because firing one shot into the vehicle could not constitute a substantial step toward the commission of first degree murder for both Nakano and Hooper. By assignment of error in his brief, Price refers only to the first shooting on Deschutes Parkway, and contests only his convictions on Counts I and II. Price, however, at oral argument, conceded that he was not contesting his conviction on Count I. Regardless of the concession, we hold that there was substantial evidence for Price's conviction on Count I, the attempted murder of Nakano, the driver. Price also clarified at oral argument that his position regarding Count II is based upon the fact that he fired only one shot into the vehicle and he intended to kill only the driver, not the passenger.

██ A person commits the crime of first degree murder when, with premeditated intent to cause the death of another person, he causes the death of such person. RCW 9A.32.030(1)(a). To convict of an attempt, the State must prove both intent to commit the crime and a substantial step toward its commission. RCW 9A.28.020(1);[1] *State v. Aumick*, 126 Wn.2d 422, 429, 894 P.2d 1325 (1995). Thus, a person commits first degree attempted murder when, with premeditated intent to cause the death of another, he/she

---

[1] "A person is guilty of an attempt to commit crime if, with intent to commit a specific crime, he does any act which is a substantial step toward the commission of that crime." RCW 9A.28.020(1).

takes a substantial step toward commission of the act. *State v. Smith*, 115 Wn.2d 775, 782, 801 P.2d 975 (1990). In order for conduct to comprise a substantial step, it must be strongly corroborative of a defendant's criminal purpose. *State v. Workman*, 90 Wn.2d 443, 452, 584 P.2d 382 (1978). *See also State v. Grundy*, 76 Wn. App. 335, 337, 886 P.2d 208 (1994). "[A]n overt act is . . . a direct, ineffectual act done toward commission of a crime[.]" *State v. Nicholson*, 77 Wn.2d 415, 420, 463 P.2d 633 (1969). Any slight act done in furtherance of a crime constitutes an attempt if it clearly shows the design of the individual to commit the crime. *Workman*, 90 Wn.2d at 451; *Nicholson*, 77 Wn.2d at 420.

 The State bears the burden of proving every element of the crime charged beyond a reasonable doubt. *State v. Billups*, 62 Wn. App. 122, 126, 813 P.2d 149 (1991) (citing *State v. Aver*, 109 Wn.2d 303, 310, 745 P.2d 479 (1987)). On review, we view the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt. *Billups*, 62 Wn. App. at 126. Whether conduct constitutes a substantial step is a question of fact. *Workman*, 90 Wn.2d at 449; *Billups*, 62 Wn. App. at 126. We hold that a reasonable jury could have found that the act of firing a single bullet into a vehicle occupied by two people sufficiently corroborated that Price took a substantial step toward commission of first degree murder for both victims.

First, Price seems to be arguing that firing one shot cannot constitute a substantial step toward the commission of attempted first degree murder for more than one victim. This argument is without merit; Price did not need to fire two bullets (one for each victim) at Nakano's car to kill or injure both victims. Moreover, factual impossibility is not a defense to an attempted crime. RCW 9A.28.020(2);[2] *State v.*

---

[2] "If the conduct in which a person engages otherwise constitutes an attempt to commit a crime, it is no defense to a prosecution of such attempt that the crime charged to have been attempted was, under the attendant circumstances, factually or legally impossible of commission." RCW 9A.28.020(2).

*Roby*, 67 Wn. App. 741, 747, 840 P.2d 218 (1992). Price deliberately fired the gun at Nakano's vehicle. The act of deliberately firing a gun toward an intended victim clearly is "strongly corroborative" of an attempt to commit first degree murder. *See State v. Vangerpen*, 125 Wn.2d 782, 796, 888 P.2d 1177 (1995) (holding that the act of reaching quickly toward a loaded, cocked, concealed gun is strongly corroborative of an attempt to fire the gun with an intent to kill). The evidence in this case sufficiently supports the finding of attempted first degree murder.

██ Second, neither does the fact that Price may have thought that the car was occupied only by the driver prevent him from possessing the requisite intent as to the passenger, Hooper. The State argues that the doctrine of transferred intent is applicable to this case. But the statutory definition of first degree murder does not require specific intent for a specific victim. What is required is the specific intent to cause someone's death. The statute provides that a defendant is guilty if he, with the intent to cause the death of *any* person, in fact caused the death of that person *"or of a third person."* RCW 9A.32.030 (emphasis added). Consequently, RCW 9A.32.030 does not require specific intent to kill a specific victim. Had the bullet killed the passenger, a charge for the completed act of first degree murder would have been appropriate for the passenger's death, while at the same time maintaining the attempt charge against the driver. Thus, the State appropriately charged attempted first degree murder for the action involving the passenger.

█ Examining the substantiality of the evidence, Price does not dispute that he possessed the requisite intent to shoot and kill Nakano, or that he fired the single shot into her vehicle on Deschutes Parkway.[3] Furthermore, a jury could reasonably infer specific intent to kill as a logical

---

[3] Price cites his statement made when exiting his truck on Deschutes Parkway —that he was going to "cap the motherf***er," as evidence of his intent to harm only one person. Report of Proceedings at 286; Br. of Appellant at 11.

probability from the evidence indicating that the defendant fired a weapon at the victims. *State v. Hoffman*, 116 Wn.2d 51, 84-85, 804 P.2d 577 (1991). *See also State v. Salamanca*, 69 Wn. App. 817, 826, 851 P.2d 1242 (holding evidence sufficient to support shooter's intent to harm all five occupants of vehicle when shooter fired into moving vehicle after altercation with driver), *review denied*, 122 Wn.2d 1020 (1993). Thus, firing the single bullet provided sufficient evidence of intent to kill both victims because Price formed the requisite intent to shoot Nakano and he fired a weapon at the vehicle occupied by both her and Hooper. Price therefore possessed the requisite intent with regard to Hooper sufficient to support his conviction. We hold that a rational trier of fact could have found the essential elements of attempted first degree murder as to both Nakano and Hooper. Therefore, there was no error in convicting Price of attempt of first degree murder on both Counts I and II.

## II. SAME CRIMINAL CONDUCT FOR CONSECUTIVE SENTENCES

Price objects to the imposition of consecutive sentences for Counts I and III involving Nakano, and Counts II and IV regarding Hooper. The trial court imposed consecutive sentences on these counts because it found that the two shooting incidents constituted "separate and distinct" criminal conduct. We agree.

 RCW 9.94A.400(1)(b)[4] provides that "[w]henever a person is convicted of two or more serious violent offenses . . . arising from separate and distinct criminal conduct . . . . [a]ll sentences . . . shall be served consecutively to each other[.]" Price argues that the crimes involved were not "separate and distinct criminal conduct" for purposes of RCW 9.94A.400(1)(b) and therefore the trial court erred in finding that both sets of counts were not the same criminal conduct for purposes of imposing the consecutive sentences.

---

[4] RCW 9.94A.400(1)(b) (1996), *amended by* LAWS OF 1999, ch. 352 § 11.

Courts look to the factors articulated in RCW 9.94A.400(1)(a) defining "same criminal conduct" to determine whether crimes are "separate and distinct" under RCW 9.94A.400(1)(b). *State v. Tili*, 139 Wn.2d 107, 122, 985 P.2d 365 (1999). If two crimes do not constitute the "same criminal conduct," they are necessarily "separate and distinct." *State v. Brown*, 100 Wn. App. 104, 113, 995 P.2d 1278 (2000). A court will consider two or more crimes the "same criminal conduct" if they: (1) require the same criminal intent, (2) are committed at the same time and place, and (3) involve the same victim.[5] RCW 9.94A.400(1)(a). The absence of any one of the prongs prevents a finding of "same criminal conduct." *State v. Vike*, 125 Wn.2d 407, 410, 885 P.2d 824 (1994); *State v. Lessley*, 118 Wn.2d 773, 778, 827 P.2d 996 (1992). An appellate court will reverse a sentencing court's determination of "same criminal conduct" under RCW 9.94A.400(1)(a) only if it finds a clear abuse of discretion or misapplication of the law. *State v. Haddock*, 141 Wn.2d 103, 110, 3 P.3d 733 (2000) (citing *State v. Elliott*, 114 Wn.2d 6, 17, 785 P.2d 440, *cert. denied*, 498 U.S. 838 (1990)); *State v. Maxfield*, 125 Wn.2d 378, 402, 886 P.2d 123 (1994). This court must narrowly construe RCW 9.94A-.400(1)(a) to disallow most assertions of same criminal conduct. *State v. Palmer*, 95 Wn. App. 187, 190-91, 975 P.2d 1038 (1999).

Price relies upon the same arguments for both victims Nakano and Hooper, so we address both victims together. Clearly, the two sets of charges as to each victim meet the "same victim" requirement of RCW 9.94A.400(1)(a). But the State disputes that Price committed the crimes at the same time and place and maintains that both shootings did not involve the same criminal intent. Therefore, we examine each requirement in turn.

*A. Time and Place*

■ First, although the shootings did not occur concur-

---

[5] RCW 9.94A.400(1)(a) (1996), *amended by* LAWS OF 1999, ch. 352 § 11. The requirements for "similar criminal conduct" remain the same under the amended law.

rently, they did occur close in time. The Supreme Court has specifically rejected a requirement that the offenses occur simultaneously in order to be the same criminal conduct. *State v. Porter*, 133 Wn.2d 177, 183, 185-86, 942 P.2d 974 (1997). In *Porter*, the Supreme Court held that the "same time" and "same intent" elements of the same criminal conduct test were satisfied because the drug deliveries were part of a continuing, uninterrupted sequence of conduct. *Porter*, 133 Wn.2d at 186. Here, we do not find a "continuing, uninterrupted sequence of conduct." Price fired his first shot after he parked the Silverado, exited the truck, and approached where Nakano and Hooper had parked. Then, Price returned to the stolen truck, pursued Nakano and Hooper onto the on-ramp, pulled alongside their vehicle on the interstate, and fired the two additional shots. Price had time to run back to his vehicle, follow the victims onto I-5, pull beside the victims, direct his passengers to get down, and then fire. Therefore, we disagree with the trial court that the two incidents took place within a sufficiently proximate time to meet this part of the same criminal conduct test.

■ Second, the trial court concluded that the two shootings took place at two sufficiently distinct, separate locations to make Price's criminal conduct separate and distinct. Here, the trial court was correct. Price first fired into Nakano's vehicle while stopped on the Deschutes Parkway, within the Tumwater city limits (Counts I and II). The second shooting took place when both cars were traveling on the interstate, within the Olympia City limits (Counts III and IV). Consequently, the two incidents took place at two different physical locations, and therefore did not constitute the "same criminal conduct."

### B. Intent

Having held that the shootings did not occur at the same time or place, we need not examine the intent requirement because all three requirements must be satisfied for a finding of same criminal conduct. *Porter*, 133 Wn.2d at 181. We choose, however, to examine the intent element, as it

also changed between the two shooting incidents. *See Lessley*, 118 Wn.2d at 778-79.

■ The Supreme Court has held that in construing the "same criminal intent" prong, the standard is the extent to which the criminal intent, objectively viewed, changed from one crime to the next. *Vike*, 125 Wn.2d at 411 (citing *State v. Dunaway*, 109 Wn.2d 207, 215, 743 P.2d 1237 (1987). First, we must objectively view each underlying statute and determine whether the required intents are the same or different for each count. *State v. Hernandez*, 95 Wn. App. 480, 484, 976 P.2d 165 (1999). If they are the same, we next objectively view the facts usable at sentencing to determine whether a defendant's intent was the same or different with respect to each count. *Hernandez*, 95 Wn. App. at 484. When dealing with sequentially committed crimes, this inquiry can be resolved in part by determining whether one crime furthered the other. *Vike*, 125 Wn.2d at 411-12. Thus, even crimes with identical mental elements will not be considered the "same criminal conduct" if they were committed for different purposes. *Haddock*, 141 Wn.2d at 113.

The State urges this court to find that Price formed different criminal intents because, in the short time between the two sets of shootings, Price had the opportunity to understand that his first attempt to murder Nakano and Hooper was unsuccessful, and then to make the choice to pursue them and attempt to murder them a second time. Relying on *State v. Grantham*, 84 Wn. App. 854, 932 P.2d 657 (1997), the State specifically argues that because Price had time to pause and reflect after committing the first criminal act and to decide to either cease his criminal activity or to commit a further criminal act, he possessed separate intents as to both shooting incidents. In *Grantham*, the court held that the defendant's two different rapes of the same victim were separate and distinct because Grantham, upon completing the first act of intercourse, had time to either cease his criminal activity or commit a further act, and, thus, formed a new intent. *Grantham*, 84 Wn. App. at 859.

Our Supreme Court has recently distinguished *Grantham* and held that a defendant's conduct in committing three separate rapes of the same victim was the same criminal conduct for purposes of RCW 9.94A.400(1)(a). *Tili*, 139 Wn.2d at 123-24. In *Tili*, the Supreme Court emphasized that there was evidence in *Grantham* that the defendant's criminal conduct ended with the first rape; the defendant stood over the victim and threatened her not to tell before beginning an argument and forcing the victim to perform oral sex. *Tili*, 139 Wn.2d at 123-24 (citing *Grantham*, 84 Wn. App. at 856-57, 859.) In contrast to *Grantham*, Tili's three penetrations of the victim were continuous, uninterrupted, and committed within a much closer time frame of approximately two minutes. *Tili*, 139 Wn.2d at 124.

Therefore, the question here is whether Price's actions were merely sequential, or part of a continuous, uninterrupted sequence of conduct. In *Tili* the court held the extremely close time frame rendered it unlikely that Tili formed an independent criminal intent between each separate penetration. *Tili*, 139 Wn.2d at 124. This case is distinguishable from *Tili*. Here, Price made the choice to return to the stolen Silverado, start the truck, and pursue the victims onto the interstate. This allowed time for Price to form new criminal intent. Like the defendant in *Grantham*, Price had time to decide either to cease his criminal conduct or to commit a further criminal act. And similarly, Division Three has recently upheld the imposition of consecutive sentences for multiple assaults of the same victims because it reasoned that the defendant had time to form new criminal intent. *In re Personal Restraint of Rangel*, 99 Wn. App. 596, 600, 996 P.2d 620 (2000). The defendant, riding as a passenger, fired at the victims' vehicle, which crashed. Then, the defendant's vehicle turned around, approached again, and the defendant fired a second time. *Rangel*, 99 Wn. App. at 600. The *Rangel* court held that the defendant was able to form a new criminal intent, because his acts were sequential, not simultaneous

or continuous. *Rangel*, 99 Wn. App. at 600. Here, Price's actions, although sequential, similarly afforded him sufficient time to form two different intents.

We hold that Price did form a new intent. It is true that he still held the intent to kill the driver, Nakano; but at the second incident he also held the intent to kill the passenger, Hooper. Price asserted at oral argument that he did not become aware of the passenger until after the first shooting. And as he drove toward the fleeing car he told his passenger that he wanted to kill the "witnesses"—plural. RP at 290-91. His new intent included killing any witnesses to his attempted murder of the driver on Deschutes Parkway. Each shooting was a complete criminal act itself. Furthermore, the method by which Price could commit the murders changed between the first and second incidents. In the first incident, Price attempted to shoot the driver, Nakano, while standing next to the vehicle. With the second incident, Price could have accomplished the murders by killing only the driver, scaring the driver, or by shooting a vital operating part of the car and causing an explosion or wreck. Thus, the scheme was substantially different from the first shooting incident.

We hold that the criminal conduct as to Counts I and III, and Counts II and IV was separate and distinct criminal conduct requiring that the sentences be served consecutively.

### III. FIREARM ENHANCEMENTS

The trial court ordered that all firearm enhancements be served consecutively to each underlying offense and to each other, believing this to be required by the law under former RCW 9.94A.310(3)(e) (1996). Former RCW 9.94A.310(3)(e) (1996) provided:

> Notwithstanding any other provision of law, any and all firearm enhancements under this section are mandatory, shall be

served in total confinement, and shall not run concurrently with any other sentencing provision.[6]

First, the State agrees with Price that the trial court erred in ordering the firearm enhancements for Counts VIII, IX, and Count XI to be served *consecutively* because these were not "seriously violent offenses" as classified under former RCW 9.94A.030(13) (1996). The State further agrees that Price should serve these sentences *concurrently*. The State asks this court to remand the case for resentencing, with instructions that the trial court order the firearm enhancements on Counts VIII, IX, and XI be served concurrently to all other firearm enhancements. We agree that these firearm enhancements should be served concurrently.

Second, the State maintains that the trial court properly ordered that the firearm enhancements for Counts I-IV (the four counts of first degree attempted murder) be served consecutively. We agree.

■ In a case decided after sentencing in this case, the Supreme Court concluded that former "RCW 9.94A.310(3)(e) [was] ambiguous with regard to whether [firearm] enhancements are to always run consecutively to each other or whether RCW 9.94A.400 is to be used to determine whether they are consecutive or concurrent."[7] *In re Post Sentencing Review of Charles*, 135 Wn.2d 239, 250, 955 P.2d 798 (1998). Because the court could not ascertain which interpretation the legislature intended when it enacted RCW 9.94A.310(3)(e), the rule of lenity required it to resolve the statutory ambiguity in favor of criminal defendants. *Charles*, 135 Wn.2d at 253. Therefore, the court held that although RCW 9.94A.310(3)(e) mandates that firearm enhancements run consecutively to their underlying sentences, former RCW 9.94A.310(3)(e) did not mandate that multiple firearm enhancements run consecutively to each other. *Charles*, 135 Wn.2d at 253. Instead, RCW 9.94A.400

---

[6] Former RCW 9.94A.310(3)(e) (1996), *amended by* LAWS OF 1998, ch. 235 § 1. The former version of the statute was in effect for sentencing in this case and remains so under the doctrine of ex post facto, because the events took place in 1997.

[7] RCW 9.94A.310(3)(e) now provides that all firearm enhancements under this section are mandatory and shall run consecutively.

governed whether multiple firearm enhancements run consecutively to or concurrently with each other. *Charles*, 135 Wn.2d at 254. In other words, whether the firearm enhancements run consecutively or concurrently with each other depended on whether the total sentences ran consecutively or concurrently according to the rules of the sentencing guidelines of RCW 9A.94.400.

But the "serious violent offense" exception was not at issue before the Supreme Court in *Charles*, 135 Wn.2d at 245 n.2. The State argues that nothing in *Charles* prohibits a trial court from imposing firearm enhancements consecutively to all base sentences and to other firearm enhancements when such sentences are imposed for "serious violent offenses." Resp't's Br. at 29. We agree.

■ Serious violent offenses must be served consecutively. RCW 9.94A.400(1)(b). Therefore, the firearm enhancements must also be served consecutively to each other when RCW 9.94A.400 directs that the base sentences be served consecutively. Under *Charles*, the court found the ambiguity when multiple concurrent sentences with sentencing enhancements were involved; therefore, the ambiguity does not arise when all four sentences are imposed consecutively by the "serious violent offense" mandate of RCW 9.94A.400(1)(b). *State v. Flett*, 98 Wn. App. 799, 806, 992 P.2d 1028, *review denied*, 141 Wn.2d 1002 (2000). Because we have held that all four counts of attempted murder arose from "separate and distinct criminal conduct," Price correctly received consecutive sentences under RCW 9.94A.400(1)(b). Therefore, the firearm enhancements should run consecutively to the base sentences, and consecutively to each other. Consecutive sentencing is mandatory, and the trial court did not err. *Flett*, 98 Wn. App. at 806.

ARMSTRONG, C.J., and HUNT, J., concur.

Review denied at 143 Wn.2d 1014 (2001).