FILED
COURT OF APPEALS
DIVISION II

2013 APR 30 AM 8: 37

STATE OF WASHINGTON

BY_____
          DEPUTY

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42548-3-II |
| Respondent, | |
| v. | |
| SHELLEY LYNN CLARK, | UNPUBLISHED OPINION |
| Appellant. | |

PENOYAR, J. – Shelley L. Clark appeals her convictions of first degree burglary and attempted second degree robbery and the resulting sentences. Clark contends that the trial court miscalculated her offender score by misapplying the same criminal conduct rule as well as the burglary antimerger statute. She raises several evidentiary challenges in a pro se statement of additional grounds (SAG). Finding no error, we affirm.

## FACTS

Ashley Loven was at home in the apartment she shared with Mary Richards when Clark knocked on the door. Clark asked whether Richards was home; Loven said she was not and that Clark could come back later. Clark responded that Richards owed her money and that she would not leave until she got it. Clark seemed aggravated, and Loven thought she was both high and drunk.

Loven did not invite Clark into the apartment but stood with the door slightly open. Clark pushed Loven out of the way and entered the apartment. Clark started walking toward the back of the apartment, looking for Richards everywhere and screaming profanities. Clark said again that Richards owed her money and that she was not leaving until she got something of value or until Richards came home and paid her.

Clark then told Loven to help her take a computer from the apartment and started to unplug it. Loven asked Clark to put the computer down, adding that she could not take someone else's property and that she should leave. Clark responded by pushing Loven into the kitchen counter, and when Loven again tried to prevent Clark from taking the computer, Clark grabbed her by the neck. Loven began screaming for help.

The police responded to a neighbor's 911 call and found Clark inside the apartment and Loven in an outer stairwell. Loven was distraught and complained that another woman would not leave her apartment. Clark denied any dispute or physical confrontation and said that Richards had asked her to check on the apartment. Clark made a call to Richards while she was talking to the police, and Richards later returned to the apartment. She had added minutes to her prepaid cell phone after running out earlier that afternoon, and she found several voicemails from Clark. Richards played the messages for the police, who later recorded them. Loven recognized the caller as Clark.

The State charged Clark by second amended information with first degree burglary based on assault and attempted second degree robbery based on the attempt to take the computer. Loven and Richards testified to the facts set forth above, with Richards adding that she did not give Clark permission to enter her apartment. Officer Michael Bokma and Captain Debra Johnson testified about responding to the 911 call and speaking to Loven, Clark, and Richards. Bokma recognized Clark's voice on the voicemail messages he recorded.

The trial court admitted five of those messages over defense counsel's objections. Clark was irate and threatening during the first three messages as she approached and then entered the apartment, but she became conciliatory in the last two messages after the police arrived.

2

The jury found Clark guilty as charged. During sentencing, the trial court concluded that her convictions were not the same criminal conduct and counted as separate offenses. The court added that even if its same criminal conduct analysis was incorrect, the offenses counted separately under the burglary antimerger statute, RCW 9A.52.050. Based on an offender score of 8, the trial court sentenced Clark to concurrent standard range sentences of 95 months for the burglary and 52.5 months for the attempted robbery.

Clark now challenges her convictions and sentences.

## ANALYSIS

Clark argues initially that the trial court erred in calculating her offender score and resulting sentences when it refused to count her convictions as one under the same criminal conduct rule and concluded that they also counted separately under the burglary antimerger statute.

I.    SAME CRIMINAL CONDUCT

If the trial court determines that some or all of the defendant's current offenses encompass the same criminal conduct, then those offenses count as one crime in calculating the defendant's offender score and sentence range. RCW 9.94A.589(1)(a). "Same criminal conduct" is defined as "two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.589(1)(a). The statute is narrowly construed to disallow most claims of same criminal conduct. *State v. Porter*, 133 Wn.2d 177, 181, 942 P.2d 974 (1997). A trial court's determination of what constitutes the same criminal conduct will not be disturbed unless that determination was manifestly unreasonable or based on untenable grounds or reasons, including misapplication of the law. *State v. French*, 157

Wn.2d 593, 613, 141 P.3d 54 (2006); *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

The parties agree that Clark's offenses occurred at the same time and place and involved the same victim. The only issue is whether Clark had the same intent when she committed the burglary and the attempted robbery. In construing this prong of the same criminal conduct test, the standard is the extent to which the criminal intent, viewed objectively, changed from one crime to the next. *State v. Price*, 103 Wn. App. 845, 857, 14 P.3d 841 (2000).

During sentencing, the State argued that when Clark entered the apartment, her intent was to collect money from Richards. When she could not find Richards, she attempted to take the computer. The trial court agreed with this assessment and with the resulting conclusion that Clark's objective intent changed:

> My sense, from hearing the evidence, was that Ms. Clark went there to collect money--collect money from Mary Richards; once she got there, saw that Ms. Richards wasn't there; the door was open; I think she had--the evidence would probably support that she pushed her way through and saw the computer there, and there were some words; and, then, there was a change, at that point, to take the computer. So, I find that it wasn't same criminal conduct.

1 Report of Proceedings (RP) at 42.

On appeal, Clark argues that she had the same objective intent to commit theft when she committed both the burglary and the attempted robbery.[1] She contends that she was trying to find Richards to obtain payment for a debt and that she committed the burglary and the attempted robbery for the same purpose: to complete the crime of theft.

---

[1] Clark urges us to apply Division One's reasoning in *State v. Reinks*, 46 Wn. App. 537, 731 P.2d 1116 (1987). The State correctly responds that this case is no longer good law. After the Supreme Court granted review and remanded for reconsideration in light of *State v. Dunaway*, 109 Wn.2d 207, 743 P.2d 1237 (1987), Division One withdrew the published opinion in *Reinks* and substituted an unpublished opinion. *See State v. Reinks*, 110 Wn.2d 1021, 755 P.2d 173 (1988).

The intent required for burglary is the intent to commit any crime within the burglarized premises. *State v. Sandoval*, 123 Wn. App. 1, 4, 94 P.3d 323 (2004). An intent to steal is a necessary element of attempted robbery. *State v. Jones*, 34 Wn. App. 848, 850, 664 P.2d 12 (1983). Thus, if the crime intended to be committed in a burglary is theft, it could share the same intent element as attempted robbery.

The State maintains, however, that Clark formed a new intent to commit robbery by attempting to take the computer after she pushed Loven aside to gain entry into the apartment and could not find Richards. The State points out that even crimes with identical mental elements will not be considered the same criminal conduct if the defendant had the time, after committing the first criminal act, to decide to either cease her criminal conduct or commit a further act, and thus formed a new intent. *Price*, 103 Wn. App. at 857-59; *see also In re Pers. Restraint of Rangel*, 99 Wn. App. 596, 600, 996 P.2d 620 (2000) (when defendant fired at vehicle from his car, and then turned his car around and fired at vehicle again, his acts were sequential and not the same criminal conduct). The question is whether the crimes were sequential or part of a continuous, uninterrupted course of conduct. *Price*, 103 Wn. App. at 858.

Clark entered the apartment forcefully with the intent to take money from Richards. After she discovered that Richards was not home, she attempted to steal the computer. She had time after the burglary to decide to either cease her criminal conduct and leave, or to commit a further criminal act. We agree with the State that Clark's crimes were sequential rather than continuous and uninterrupted and did not count as one offense under the same criminal conduct rule. *See State v. Grantham*, 84 Wn. App. 854, 859, 932 P.2d 657 (1997) (crimes were sequential and counted separately where, after committing first rape, defendant stood over victim and argued with her before committing second rape).

5

Because the trial court also ruled that the crimes counted separately under the burglary antimerger statute, we next consider this alternative basis for the offender score calculation.

II.     BURGLARY ANTIMERGER STATUTE

The burglary antimerger statute, RCW 9A.52.050, provides:

> Every person who, in the commission of a burglary shall commit any other crime, may be punished therefor as well as for the burglary, and may be prosecuted for each crime separately.

This clear language permits the trial court to punish "any other crime" committed during the course of a burglary, even where the burglary and the additional crime encompass the same criminal conduct. *State v. Lessley*, 118 Wn.2d 773, 781, 827 P.2d 996 (1992); *see also State v. Elmore*, 154 Wn. App. 885, 900, 228 P.3d 760 (2010) (statute's plain language shows legislature's intent that crimes committed during a burglary do not merge when the defendant is convicted of both). The application of RCW 9A.52.050 is discretionary with the sentencing judge. *Lessley*, 118 Wn.2d at 782; *see also State v. Davis*, 90 Wn. App. 776, 783, 954 P.2d 325 (1998) (trial court has discretion to apply the statute or to refuse to apply it).

Clark contends that the trial court abused its discretion in applying the burglary antimerger statute on the basis of her criminal history. The State referred to this history in arguing that the antimerger statute should apply, and the trial court did as well: "I tend to support that view, that somebody with a history—with a prior strike offense should know better, you need to—and need to be careful not to do—commit different crimes." 1 RP at 44. In sentencing Clark, the court also referred to the fact that the home is a sanctuary that should never be invaded by force.

6

Clark cites no authority for the assertion that a defendant's criminal history may not affect a court's decision in applying the burglary antimerger statute. Accordingly, we uphold the court's application of RCW 9A.52.050.

III.    SAG

In her pro se SAG, Clark first challenges the trial court's decision to allow Loven to testify. Clark argues that Loven's inconsistent testimony about her drug use and the alleged assault rendered her testimony inadmissible. The fact that Loven's testimony contained inconsistencies, however, does not render it inadmissible. Defense counsel was able to explore the alleged inconsistencies on cross examination and it was for the jury to decide whether they affected Loven's credibility. *See State v. Jungers*, 125 Wn. App. 895, 901, 106 P.3d 827 (2005) (issues of witness credibility are for jury alone to decide).

Clark next argues that the prosecutor committed misconduct during closing argument when he recalled some of Loven's testimony. We see no misrepresentation and no misconduct in the prosecutor's closing argument. *See State v. Guizzotti*, 60 Wn. App. 289, 296, 803 P.2d 808 (1991) (prosecutor may not mislead jury by misstating evidence).

Clark also contends that Johnson and Loven contradicted each other about Clark's location when the officers arrived and that these contradictions show the unreliability of both witnesses. Here again, it was the jury's responsibility to assess the credibility of these witnesses, and any contradictions in their testimony are not grounds for relief.

Finally, Clark argues that the trial court erred by admitting the voicemail recordings from Richards's phone through Bokma because he is not a voice recognition expert or a sound recording technician. Clark reasons that there was no certainty that she left the messages and

7

that the quality of the recordings rendered them capable of being construed in many different ways. She also complains about an inadequate chain of custody for the cell phone evidence.

At trial, defense counsel challenged the admission of the voicemail messages on several grounds. Counsel argued first that there was an inadequate foundation for admission because there was no proof as to the time and date the calls were made. Counsel also argued that the calls were not relevant, particularly where a large portion of their content was inaudible. Finally, counsel argued that the prejudicial value of the messages exceeded their probative value because of the profanity they contained.

In response, the State explained that Richards did not have any messages on the day of the offenses until she added minutes to her phone shortly before returning to her apartment. Upon that return, she had several messages, some of which Clark had left in Bokma's presence. The State argued that the messages were relevant in showing Clark's progress in approaching and entering the apartment, her anger at Richards, and her contrition following her arrest.

The trial court found an adequate foundation for each call. Richards had testified that she had no messages when her minutes were running low on the afternoon of the burglary, and that she received several message after she added time to her phone. Richards testified further that she had known Clark for 25 years and recognized her voice on the messages, and Bokma testified that he recognized Clark's voice on the messages as well.

The trial court also found the messages relevant, in that they showed the speaker's state of mind. The court agreed that some of the content was inaudible, but it did not find that this factor rendered the messages inadmissible. Finally, the court refused to hold that the existence of profanity rendered the messages unfairly prejudicial.

Clark does not demonstrate that the trial court's decision to admit this evidence was manifestly unreasonable or based on untenable grounds or reasons. *State ex rel. Carroll*, 79 Wn.2d at 26. Moreover, Clark did not challenge Bokma's qualifications or the chain of custody for the voicemail evidence at trial, so she cannot raise these challenges on appeal. *See State v. Boast*, 87 Wn.2d 447, 451, 553 P.2d 1322 (1976) (party may only assign error in appellate court on specific ground of evidentiary objection made at trial); *City of Seattle v. Carnell*, 79 Wn. App. 400, 403, 902 P.2d 186 (1995) (general lack of foundation objection will not preserve chain of custody objection for appeal).

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Penoyar, J.

We concur:

_____
Van Deren, J.

_____
Worswick, C.J.

9