2013 JUN 10 AM 10: 21

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 68263-6-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| DAMOAN T. STEWARD, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: June 10, 2013 |
| | ) | |

BECKER, J. — Damoan Steward challenges the sentence imposed upon his convictions for three counts of second degree rape. He argues that the three rapes encompassed the "same criminal conduct" and therefore should have counted as one crime for purposes of calculating his offender score. However, the trial court did not abuse its discretion by determining that the rapes were interrupted, and not continuous. We affirm.

In June 2009, both Steward and O.P. were patients at an inpatient psychiatric hospital. On the evening of Saturday June 20, O.P. was heavily sedated after having attempted to escape from the facility earlier in the day. At approximately 11:45 p.m., a hospital employee looked at a monitor and discovered that Steward was in O.P.'s room and was getting into bed with her.

Several hospital employees proceeded to O.P.'s room. Steward was out of the bed by the time they arrived and left the room as directed. The staff closely monitored Steward for the rest of the night.

The following Monday, hospital staff watched surveillance video from the night of June 20 recorded by a camera in O.P.'s room. The video showed that Steward entered O.P.'s room with a book in his hand at 11:07 p.m. O.P. lay on her stomach. Steward rubbed O.P.'s backside, then removed her blanket, pushed up her hospital gown, and pulled her underpants aside. Steward then placed his mouth on O.P.'s vagina. He also wet his fingers in his mouth and touched her vagina with his fingers. After approximately one minute, he stopped, picked up his book, and left the room. O.P. did not move or appear to respond in any manner during the encounter.

Less than one minute later, Steward entered O.P.'s room a second time. He set the book down and slid O.P.'s blanket and underpants over. Steward then repeatedly inserted his finger in O.P.'s vagina, periodically licking the finger. Then he penetrated her orally. O.P. did not move. When shadows appeared under the door, Steward abruptly stood up and covered O.P. with the blanket. He moved to the head of the bed and slightly shook O.P.'s shoulder as a staff person entered the room. Steward and the staff person left the room together.

About five minutes later, Steward entered O.P.'s room for a third time. Steward sat on the side of the bed and penetrated O.P. repeatedly with his finger, periodically wetting his finger in his mouth. When Steward got down on

2

his knees and tried to reposition O.P., she suddenly lifted her head, pulled her blanket up, and turned on her side. Steward got up, picked up his book, appeared to try to converse with O.P., and then left.[1] In each of these three instances, Steward stayed in O.P.'s room for approximately two minutes.

During the 20 minutes that followed, Steward entered the room three more times. During these encounters, the video depicts Steward getting into bed and under the blanket with O.P. or rubbing her.

After viewing the surveillance recording, hospital staff called the police. When a police officer interviewed Steward at the hospital, he claimed that he and O.P. had been flirting and had agreed that he would sneak into her room. He said he was aware they could only have contact in between staff rounds that took place every 15 minutes. He said O.P. was asleep when he first came into her room, but then she woke up and interacted with him. Steward initially denied having sex with O.P. but eventually admitted to oral sex. He said that when he heard staff in the hallway, he went next door to his room and waited until it was safe to return. He described O.P. as "laid back" during the encounter. The police also spoke to O.P., but she had no recollection of Steward entering her room six times or having sexual contact with him.

The State charged Steward with three counts of second degree rape, one count based on each of the three times Steward entered O.P.'s room and had sexual intercourse with her. The State also charged him with three counts of

---

[1] The recording has no audio component.

attempted second degree rape based on the three times Steward entered the room, but the recording did not show additional penetration. A jury convicted Steward of the three counts of rape but acquitted him of the attempted rape charges.

At sentencing, the parties agreed that Steward had three criminal history points resulting from prior convictions. The State argued that he had an additional six points based on his two current sex offenses, which were subject to a tripling provision, RCW 9.94A.525(17), resulting in a total offender score of nine. The defense, on the other hand, calculated the offender score as three, arguing that Steward's current sex offenses should not be included because they encompassed the same criminal conduct. The trial court disagreed and imposed concurrent standard range sentences based on an offender score of nine.

When sentencing a person for multiple current offenses, the sentencing court determines the offender score by considering all other current and prior convictions as if they were prior convictions. RCW 9.94A.589(1)(a). However, if the sentencing court finds that some or all of the current offenses encompass the same criminal conduct, then those offenses are counted as a single crime. RCW 9.94A.589(I)(a).

Crimes constitute the "same criminal conduct" when they "require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.589(1)(a). Unless all three of these elements are present, the offenses do not constitute the same criminal conduct and must be

4

counted separately in calculating the offender score. <u>State v. Porter</u>, 133 Wn.2d 177, 181, 942 P.2d 974 (1997). The legislature intended that the courts construe RCW 9.94A.589(1)(a) narrowly in order to disallow most assertions of same criminal conduct. <u>State v. Wilson</u>, 136 Wn. App. 596, 613, 150 P.3d 144 (2007). The defendant bears the burden of proving same criminal conduct. <u>State v. Graciano</u>, 176 Wn.2d 531, 539-40, 295 P.3d 219 (2013).

There is no dispute that Steward's offenses were committed at the same place and involved the same victim. Steward contends that the rapes also occurred at the same time. He points out that less than a minute elapsed between the conclusion of the first rape and the beginning of the second, and just over five minutes passed between the second and third rapes. Steward further contends that the offenses shared the same criminal intent, because the nature of his criminal objective—to engage in sexual intercourse—was the same each time he entered O.P.'s room.

We review the trial court's determination of what constitutes the same criminal conduct for an abuse of discretion or misapplication of the law.[2] <u>Graciano</u>, 176 Wn.2d at 537. "Under this standard, when the record supports only one conclusion on whether crimes constitute the 'same criminal conduct,' a sentencing court abuses its discretion in arriving at a contrary result." <u>Graciano</u>, 176 Wn.2d at 537-38. "But where the record adequately supports either

---

[2] At the time Steward filed his brief in this appeal, the Supreme Court's decision in <u>Graciano</u> was pending and Steward advocated for a de novo standard of review. But <u>Graciano</u> now settles any debate as to the applicable standard of review.

conclusion, the matter lies in the court's discretion." Graciano, 176 Wn.2d at 538.

The trial court expressly acknowledged that the three crimes occurred within a narrow time frame and its ruling was not based on the conclusion that the rapes occurred at different times. Instead, the court focused on the defendant's conduct of completing each rape, leaving the room, and returning to commit further rapes. As the State points out, even where crimes share the same mens rea element, they may not be considered the same criminal conduct if the defendant had the time, after committing the first criminal act, to decide to either cease the criminal conduct or commit a further act, and thus form a new intent. State v. Grantham, 84 Wn. App. 854, 859, 932 P.2d 657 (1997). The critical question is whether the crimes were sequential, or part of a continuous, uninterrupted course of conduct. See State v. Price, 103 Wn. App. 845, 857-59, 14 P.3d 841 (2000) (crimes sequential where after the first shooting, defendant returned to his truck, pursued the victims up an on-ramp, and pulled up next to them on the freeway before shooting a second time), review denied, 143 Wn.2d 1014 (2001); see also In re Pers. Restraint of Rangel, 99 Wn. App. 596, 600, 996 P.2d 620 (2000) (where defendant fired at a vehicle from his car, then turned his car around and fired at the vehicle again, his acts were sequential and not the same criminal conduct).

For example, in Grantham, after the defendant finished raping the victim, he "had the presence of mind" to threaten her not to tell anyone about the

6

assault, heard her pleas to take her home, and then "had to use new physical force" by beating and kicking her to accomplish a second rape. Grantham, 84 Wn. App. at 859. Although the two rapes were committed against the same victim, in the same bedroom, and in short succession, the trial court determined that the two rapes did not involve the same criminal intent and therefore did not constitute the same criminal conduct. Grantham, 84 Wn. App. at 859-60. This court concluded that the record was sufficient to support the trial court's discretionary determination.

Here, as in Grantham, when Steward completed one rape and left the scene, he "had the time and opportunity to pause, reflect, and either cease his criminal activity or proceed to commit a further criminal act." Grantham, 84 Wn. App. at 859. After raping O.P., Steward had the presence of mind to leave her room so as not to be detected by hospital staff. The trial court thus had a basis to determine that each time Steward left O.P.'s hospital room, there was a distinct break in the assaultive conduct.

Steward compares the facts here to those in several other cases where, despite the trial courts' determinations to the contrary, appellate courts concluded that the evidence at trial supported only the conclusion that the offenses encompassed the same criminal conduct. State v. Tili, 139 Wn.2d 107, 119-20, 985 P.2d 365 (1999); State v. Palmer, 95 Wn. App. 187, 191-92, 975 P.2d 1038 (1999), Porter, 133 Wn.2d at 186. The facts of these cases are similar to Steward's case to the extent they involve sequential crimes committed within a

7

very short time frame. But none of the defendants in Tili, Palmer, or Porter did anything in between the committing the crimes, such as leaving the scene of the crime, that could be viewed as clearly interrupting the violence or criminal conduct. Thus, there are specific factual differences in Steward's case such that the trial court here was not compelled to reach the same result. Having presided over the trial, the trial judge was in the best position to evaluate the sequence of events and determine whether Steward's assaults were continuous or interrupted for the purposes of same criminal conduct analysis. Even if we were to agree that the evidence here is susceptible to different interpretations, the matter lies within the trial court's discretion and we will not substitute our judgment for that of the trial court. See Graciano, 176 Wn.2d at 537.

Steward has not demonstrated that the trial court abused its discretion in determining that the rapes were merely sequential and not an uninterrupted course of conduct.

Affirmed.

_Becker, J._

WE CONCUR:

_Appelwick, J._                    _Schindler, J._

8