IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 84221-8-I |
| Respondent, | |
| v. | DIVISION ONE |
| ABDIKADIR KHALIF, | |
| Appellant. | UNPUBLISHED OPINION |

CHUNG, J. — Abdikadir Khalif was convicted of attempted indecent liberties and robbery in the first degree. Khalif argues that the evidence is insufficient to establish his intent to have sexual contact, as is required to prove the crime of attempted indecent liberties. Khalif also challenges the Victim Penalty Assessments (VPAs) imposed in connection with his convictions. We conclude the evidence in the record is sufficient to sustain his conviction of attempted indecent liberties, but remand to the trial court to strike the VPA from Khalif's judgments and sentences.

BACKGROUND

Based on an April 16, 2020 incident, the State charged Khalif with attempted indecent liberties, robbery in the first degree, and assault in the second degree. Before trial, Khalif filed a Knapstad[1] motion seeking to dismiss the charge of attempted indecent liberties, arguing that the allegations did not establish a prima facie case of the offense. According to Khalif, there was no evidence of intent to engage in sexual

_____

[1] State v. Knapstad, 107 Wn.2d 346, 729 P.2d 48 (1986).

contact, but only evidence that the attacker accidentally grasped the victim's pants during a physical struggle. The court denied the motion, noting that, when viewed in the light most favorable to the State, the facts set forth in the probable cause certification and the victim's statements after the crime were sufficient to establish the elements of attempted indecent liberties.

Over the course of a five-day trial, the State presented the testimony of 15 witnesses, including the victim, N.L, her son, police officers, people who heard the incident and called 911, and a forensic scientist. According to N.L.'s testimony, on the night of the incident, as was her usual routine, she arrived late at night at her elderly mother's residence in West Seattle. N.L. was wearing pajama pants, a jacket, and a purse over one shoulder and across her body. As she parked in the parking lot, N.L. observed a man attempt to open the door of a nearby vehicle in the lot. The man then abruptly turned toward her vehicle, opened the driver's side door, jumped into the driver's seat, and locked the door. Using his forearm to exert pressure on her neck, the man pushed N.L. down and across the center console. Then, once he was on top of N.L., the man grabbed her pajama pants with one hand and pulled them about 10 inches down her legs. Meanwhile, N.L. used her one free hand to repeatedly honk the horn in order to draw attention to the attack. In an attempt to stop her from making noise, the man tried to cover N.L.'s head with his arms and his jacket, and she could not breathe. N.L. used her free hand to create some airspace. The man told N.L. to stop or else he would kill her. The man then placed both hands around N.L.'s neck and began to choke her until she could not breathe. Still wearing her purse, N.L. told her attacker

2

that if he wanted money, he should "just go ahead and take it." In response, the assailant punched N.L. in the face several times until she bled. Then, the man shifted over to the passenger side and grabbed N.L.'s purse. N.L. was then able to sit up, open the door, escape from the car and call for help. The assailant also got out of the car, jumped over a wall and out of the parking lot.

Neighbors who heard the honking and N.L.'s screams called 911. When law enforcement responded a few minutes later, N.L. told them the assailant attempted to rape her. Police were later able to identify and locate Khalif after he was depicted on surveillance video footage engaging in transactions using N.L.'s credit card. A witness familiar with Khalif also identified him at trial. A forensic scientist with the Washington State Patrol Crime Laboratory analyzed hair recovered in N.L.'s vehicle and testified that it matched a sample of Khalif's DNA to a probability of 6.3 octillion to one. Khalif did not testify.

After the State presented its case, the defense again moved to dismiss all three charges, challenging the sufficiency of the evidence. As to the attempted indecent liberties charge, Khalif argued that there was insufficient evidence of intent to cause N.L. to have sexual contact with him because N.L.'s pants were not "lowered to any significant extent," her genital areas were not exposed, and the perpetrator did not persist in the effort to remove N.L.'s clothing after he physically overwhelmed her by punching her multiple times. Khalif also claimed there was insufficient evidence of force, and to the extent that force was applied, it was used only to take N.L.'s property. Finally, he argued that, according to the evidence, the perpetrator fled once the crime he

intended to commit—robbery—was complete, and there was no indication that a bystander interrupted the crime, or of another intervening event.

The court denied the motion as to all charges. The court determined there was evidence of force sufficient to support the charge of attempted indecent liberties, N.L.'s escape from the car and yelling for help could be seen as an intervening event, and the "sequence of events" as described in the testimony supported the inference that the attacker intended to engage in indecent liberties.

The jury convicted Khalif as charged. The court concluded that the assault charge merged with the other counts, and dismissed that count on double jeopardy grounds at sentencing. In connection with each of Khalif's remaining convictions, the court imposed a victim penalty assessment.

DISCUSSION

I.      Sufficiency of the Evidence

We review challenges to the sufficiency of the evidence by considering whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the essential elements of the crime beyond a reasonable doubt. State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). A challenge to the sufficiency of the evidence admits the truth of the State's evidence and all reasonable inferences that can be drawn from that evidence. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). All such inferences "must be drawn in favor of the State and interpreted most strongly against the defendant." Id.

"A person is guilty of indecent liberties when he or she knowingly causes another person to have sexual contact with him or her or another. . . [b]y forcible compulsion." RCW 9A.44.100(1)(a). " 'Sexual contact' means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(13). Because the State charged Khalif with attempted indecent liberties, the State had to show that Khalif took a substantial step toward the crime of indecent liberties, with the intent to commit that crime. RCW 9A.28.020 "Any slight act done in furtherance of a crime constitutes an attempt if it clearly shows the design of the individual to commit the crime." State v. Price, 103 Wn. App. 845, 852, 14 P.3d 841 (2000).

As argued below, Khalif claims the State failed to prove that he intended to have sexual contact with N.L. and took a substantial step in furtherance of that goal. Khalif contends that the "single piece of evidence"—namely, the evidence that he "briefly grabbed" N.L.'s pajama pants "in the course of the struggle for her purse"—was insufficient to establish a substantial step toward the commission of indecent liberties.

But N.L. did not testify about a struggle over her purse. To the contrary, she testified that she offered her purse to the man who was attacking her, in an effort to stop the assault. Describing the facts established by the evidence, Khalif asserts that in response to N.L.'s resistance and honking, her attacker punched her and attempted to strangle her. And he maintains that "[i]n the course of the struggle, [N.L.] felt a tug on the pajama pants she was wearing and felt them slip down."

5

Khalif misleadingly presents the sequence of events. According to N.L.'s testimony, once inside her vehicle, the attacker immediately locked the door behind him, pushed her down and across the console, and with his free hand, grabbed her pants and pulled them partially down. This testimony supports a reasonable inference that, grabbing N.L.'s pants was not an "innocuous act," but was indicative of intent to have forcible sexual contact with N.L. It was only after N.L. vigorously resisted, repeatedly honked the horn for about two minutes, and indicated that she would let him have her purse, that Khalif moved over, grabbed the purse, and left the scene.

A rational trier of fact, viewing the evidence in the light most favorable to the State, could find the essential elements of attempted indecent liberties beyond a reasonable doubt. The evidence supports a reasonable inference that Khalif took a substantial step toward causing N.L. to have sexual contact with him when he got into her car, locked the door, pushed her down and out of sight, tugged at her pants and pulled them partially down her legs. We affirm Khalif's conviction of attempted indecent liberties.

II.    Victim Penalty Assessment

Although the counts were charged and tried together, the court entered two judgments and sentences—one for Count 1 (felony sex offense) and one for Count 2 (felony, non-sex offense)—and separately imposed a VPA in each. Khalif argues in supplemental briefing that this court should strike the $500 VPA imposed in each of Khalif's judgments and sentences imposed as a mandatory fee at the time of sentencing.

Khalif's sentencing memorandum noted he had been determined to be indigent and homeless at the time he was arrested and requested that "mandatory fees only" be imposed. Accordingly, the court imposed the VPA but waived other legal financial obligations. The State does not dispute that Khalif is indigent as defined in RCW 10.01.160(3). The State agrees with Khalif that under the current version of RCW 7.68.035, the trial court must waive any VPA imposed prior to July 1, 2023, on the defendant's motion, if the defendant lacks the ability to pay or is indigent. RCW 7.68.035(5)(b).

Generally, a VPA of $500 shall be imposed "for each case or cause of action that includes one or more convictions of a felony or gross misdemeanor . . . ." RCW 7.68.035; former RCW 7.68.035 (2018). Here, as the counts were charged and tried together in a single case, at most, a single VPA could be imposed. Under RCW 7.68.035(4), enacted in July 2023, trial courts are required to waive the VPA if the defendant is indigent as defined in RCW 10.01.160(3). This court has applied this waiver to cases pending direct appeal when the law went into effect. See State v. Ellis, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023) (citing State v. Ramirez, 191 Wn.2d 732, 748-49, 426 P.3d 714 (2018)).

Under these circumstances, the State concedes that remand to strike each VPA is appropriate. We accept the State's concession and remand to the trial court to strike the VPAs imposed in each of Khalif's judgments and sentences.

We remand to the trial court to strike the VPA provisions from Khalif's judgments and sentences, and otherwise affirm.

7

_Cheung, J._

WE CONCUR:

_Hazelrigg, ACJ_          _Smith, C.J._