[No. 11290-0-III.   Division Three.   January 28, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. CLYDE L. HENDERSON, *Appellant*.

*Linda Edmison,* for appellant.

*Dennis DeFelice, Prosecuting Attorney,* and *Stephen P. Traylor* and *Craig E. Stilwill, Deputies,* for respondent.

MUNSON, J. — Clyde Henderson appeals his jury convictions on two counts of delivery of cocaine. He raises issues

concerning (1) the constitutionality of RCW 69.50.435(a) which provides for an enhanced penalty for persons convicted of selling controlled substances in a public park; (2) the sufficiency of the evidence to support a finding the sale took place in a park; (3) whether the two counts of delivery constituted the same criminal conduct for purposes of computing his offender score; and (4) by a pro se brief contends he was denied effective assistance of counsel. We affirm.

Detective Larry Taylor of the Benton County Sheriff's Office was assigned to the Drug Enforcement Administration. On September 12, 1990, he was working with a confidential informant, Gaylen McKinney. Detective Taylor arranged for Mr. McKinney to make a controlled buy at Kurtzman Park in Pasco. He strip searched Mr. McKinney, searched his vehicle, and gave him $40. Mr. McKinney was kept under surveillance by other officers while he proceeded to the park, made a contact, and returned to Detective Taylor with cocaine.

Mr. McKinney testified he had been told to target a blond woman in a white outfit who law enforcement officers believed was a former confidential informant who had returned to drug dealing. When he arrived at the park, Clyde Henderson and a blond woman, later identified as Tami Murray, came up to him and asked what he wanted. He said "coke" and told them he had $40. Mr. Henderson told him to stay there, then disappeared between two buildings. He was gone a couple of minutes; when he came back, he handed Mr. McKinney the cocaine. Ms. Murray stood 10 to 12 feet away while he and Mr. Henderson were talking.

Mr. McKinney turned the cocaine over to Detective Taylor. Detective Taylor then gave Mr. McKinney $80 and instructed him to return to the park and attempt to purchase drugs from Ms. Murray. When Mr. McKinney arrived at the park the second time, Ms. Murray was sitting in a blue vehicle and waved him over. He walked over to the car, and she told him to "get in". Mr. Henderson then came over to the car and asked Mr. McKinney what he wanted. Mr. McKinney asked for a sixteenth of an ounce and gave Mr.

Henderson the $80 Detective Taylor had given him after the first buy. When Mr. Henderson returned with the cocaine, Ms. Murray asked for a "kick", *i.e.*, a little bit for helping. Mr. McKinney complied. Detective Taylor testified without objection that it is common for buyers to give "kickbacks" of cocaine to persons who help them secure drugs. Following the transaction, Mr. McKinney turned over another bindle of cocaine to Detective Taylor.

Mr. Henderson testified in his own behalf; he specifically denied selling Mr. McKinney any drugs. The jury returned a guilty verdict.

■ First, does the enhanced penalty for selling drugs in a public park violate the state and federal constitutions? We have held the challenged statutes do not violate due process and equal protection guaranties. *See State v. Carter*, 64 Wn. App. 90, 823 P.2d 523 (1991).

Second, is the evidence such that a rational trier of fact could find beyond a reasonable doubt that the sale took place in a park? David McDonald, the Pasco city planner, testified Kurtzman Park is a city park. He also stated the parking lot in which the sales occurred was within the boundaries of the park. Nevertheless, Mr. Henderson asserts it was necessary for the State to introduce a plat map indicating the boundaries of the park or elicit from Mr. McDonald testimony specifically delineating the boundaries. We disagree.

■ While RCW 69.50.435(e) permits the introduction of a plat map into evidence to prove the sale took place within park boundaries, the statute also provides: "This section shall not be construed as precluding the prosecution from introducing or relying upon any other evidence or testimony to establish any element of the offense." We hold Mr. McDonald's testimony was such that a rational trier of fact could find beyond a reasonable doubt that the sales took place in a public park. *See State v. Green*, 94 Wn.2d 216, 616 P.2d 628 (1980).

Third, do the two counts of delivery constitute the same criminal conduct for purposes of computing Mr. Henderson's offender score? *See* RCW 9.94A.400(1)(a).

RCW 9.94A.400(1)(a) provides in part:

> Except as provided in (b) of this subsection, whenever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score: *Provided,* That if the court enters a finding that some or all of the current offenses encompass the same criminal-conduct then those current offenses shall be counted as one crime. . . . "Same criminal conduct," . . . means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim.

In *State v. Lewis,* 115 Wn.2d 294, 797 P.2d 1141 (1990), the defendant was convicted of three counts of delivering marijuana to a police informant and one count of attempted delivery to the same informant. The criminal conduct occurred on four separate dates, over about a 3-week period. *Lewis,* at 296-97. He argued that the four counts constituted the "same criminal conduct". The court held at page 302:

> The SRA's single criminal conduct analysis has approached a single intent as entailing numerous offenses committed as part of a scheme or plan, with no substantial change in the nature of the criminal objective. *State v. Boze,* 47 Wn. App. 477, 480, 735 P.2d 696 (1987). In Lewis' case, his acts were not part of a single criminal conduct because the commission of one drug deal did not further the commission of the other drug deals, and they were not part of a recognizable scheme or plan.

As for the same time and place element, the court commented:

> [T]he same time and place analysis applies only when there is a continuing sequence of criminal conduct. Some examples of when the analysis has been utilized to determine whether multiple criminal acts had occurred are when the defendants committed armed robbery and attempted to murder their victims and when a defendant kidnapped two women in order to rob them.

*Lewis,* at 302-03.

■ The conduct in *Lewis* was separated by days, while the two counts here arose out of conduct separated by less than 1 hour. However, as in *Lewis*, the earlier sale did not further the commission of the second sale and the sales were not part of a recognizable scheme or plan. Each sale was independently accomplished upon its completion. Nor was there a continuing sequence of conduct; a break of some significant time occurred between the first and second sales. *Cf. State v. Calloway*, 42 Wn. App. 420, 711 P.2d 382 (1985) (two burglaries committed within 1 hour not "same criminal conduct").

We hold the court did not err when it concluded the two counts did not constitute the same criminal conduct.

Finally, Mr. Henderson contends in his pro se brief that he was denied effective assistance of counsel. He alleges his attorney did not interview and secure the attendance at trial of persons identified by Mr. Henderson as present in the park that day and able to corroborate his testimony.

■ The test for ineffective assistance of counsel is whether (1) counsel's performance fell below an objective standard of reasonableness, and (2) the deficiency prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052, 2064 (1984); *State v. Jeffries*, 105 Wn.2d 398, 418, 717 P.2d 722, *cert. denied*, 479 U.S. 922 (1986). Here, counsel advised the trial court Mr. Henderson had told him a Nikki Barnes and a James Kinsey were possible witnesses. However, he was unable to contact Ms. Barnes because she had no telephone number or address, and he had been trying for 2 weeks, without success, to contact Mr. Kinsey. Mr. Henderson does not indicate in his pro se brief whether he gave counsel means by which to reach the witnesses. Absent such information, we cannot say counsel's performance fell below an objective standard of reasonableness.[1]

---

[1] Mr. Henderson also argues his counsel should have called an Officer Monroe. According to Mr. Henderson, the officer would have contradicted the testimony of the other officers on a minor point. The anticipated testimony was immaterial to a determination of Mr. Henderson's guilt. Thus, counsel's failure to call Officer Monroe does not constitute ineffective assistance.

Affirmed.

Shields, C.J., and Thompson, J., concur.