942 P.2d 974 (1997)
133 Wash.2d 177
The STATE of Washington, Respondent,
v.
Teresa M. PORTER, Petitioner.
No. 64174-9.
Supreme Court of Washington, En Banc.
Argued May 14, 1997.
Decided September 4, 1997.
*975 Law Office of Robert T. Beattie, Diane Russell, Silverdale, for Petitioner.
Russell Hauge, Kitsap County Prosecutor, Pamela B. Loginsky, Deputy, Port Orchard, for Respondent.
DOLLIVER, Justice.
Teresa Porter challenges her sentence for three counts of delivery of a controlled substance. Porter argues that the sentencing court erroneously lengthened her sentence by classifying two of the counts as separate criminal conduct.
Porter pleaded guilty to three counts of delivery of a controlled substance. Two of those counts stemmed from one incident where an undercover officer purchased methamphetamine from Porter (count 1) and immediately thereafter purchased marijuana from Porter (count 2). Count 3 was for the delivery of methamphetamine on a later occasion.
Porter's mother and codefendant in the first incident, Nancy Scott, pleaded guilty and was sentenced to 24 months. The information provides the following description of the events leading to the charges for counts 1 and 2:
On November 16, 1993, Bremerton Police Department Detective Jeff David was working in an undercover narcotics investigation. He arranged to go to Nancy Scott's residence in Bremerton, Kitsap County, to buy methamphetamine and possibly marijuana from her daughter, Teresa Porter. Other officers provided surveillance while Detective David entered the Scott residence.
Once inside the residence, Detective David made contact with Teresa Porter. Detective David gave Porter $125.00 and in return received from her approximately 1.25 grams of what he believed to be methamphetamine, based on his training and years of experience.
After the methamphetamine transaction was completed, Detective David asked Porter if she had any marijuana for sale. Porter agreed to sell Detective David marijuana and he gave her $40.00. Porter gave Detective David a baggie containing approximately 1/8 ounce of what was later tested and determined to be marijuana.
Clerk's Papers at 5.
According to the police report, the officer was at the residence for approximately 25 minutes. The officer's report indicated the methamphetamine was delivered at 11:49 and the marijuana was delivered at 11:59.
The sentencing court treated counts 1 and 2 as separate criminal conduct, which gave Porter an offender score of seven. The resulting standard sentencing range for counts 1 and 3 was 77-102 months, and the range for count 2 was 33-43 months. RCW 9.94A.310(1). However, the maximum penalty for each count was five years. RCW 69.50.401(a)(1)(ii) (the statute has since been amended to make the maximum penalty ten years). The trial court sentenced Porter to 60 months each for counts 1 and 3, and 43 months for count 2, time to be served concurrently.
Porter appealed the sentencing decision. The State cross-appealed. A court commissioner upheld Porter's sentence and the Court of Appeals refused to modify the commissioner's ruling. Porter then sought discretionary review by this court.
Porter claims the sentencing court should have treated counts 1 and 2 as the same criminal conduct under RCW 9.94A.400(1)(a) *976 for purposes of computing her offender score. If the two counts had been treated as the same criminal conduct, Porter's offender score would have been four points, and the standard sentencing range would have been 41-54 months for counts 1 and 3 and 12-16 months for count 2. Under Porter's argument, her 60-month sentence exceeds the standard sentencing range for any of her convictions.
The sole issue presented is whether the sentencing court properly treated counts 1 and 2 as separate criminal conduct under RCW 9.94A.400(1)(a). The statute, in relevant part, states:
[W]henever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score: PROVIDED, That if the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime...." Same criminal conduct," as used in this subsection, means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim.
In order for separate offenses to "encompass the same criminal conduct" under the statute, three elements must therefore be present: (1) same criminal intent, (2) same time and place, and (3) same victim. The absence of any one of these prongs prevents a finding of same criminal conduct. State v. Vike, 125 Wash.2d 407, 410, 885 P.2d 824 (1994).
Although the statute is generally construed narrowly to disallow most claims that multiple offenses constitute the same criminal act, there is one clear category of cases where two crimes will encompass the same criminal conduct"the repeated commission of the same crime against the same victim over a short period of time." 13A Seth Aaron Fine, Washington Practice § 2810 at 112 (Supp.1996). We have therefore held that simultaneous delivery or possession with intent to deliver two different drugs constitutes the same criminal conduct. State v. Garza-Villarreal, 123 Wash.2d 42, 864 P.2d 1378 (1993).
An appellate court will reverse a sentencing court's decision only if it finds a clear abuse of discretion or misapplication of the law. State v. Elliott, 114 Wash.2d 6, 17, 785 P.2d 440, cert. denied, 498 U.S. 838, 111 S.Ct. 110, 112 L.Ed.2d 80 (1990).
We will discuss the three statutory elements in reverse order:
(3) Same victim:
There is no dispute that both sales involved the same victim. The victim of Porter's drug sales was the public at large. See State v. Garza-Villarreal, 123 Wash.2d 42, 47, 864 P.2d 1378 (1993).
(2) Same time and place:
The sentencing court based its decision to treat the sales as separate criminal conduct on the fact that the deliveries occurred "distinctly in time." Porter argued at sentencing that the incidents satisfied the "same time" element because the deliveries occurred back to back within a 10-minute period. Porter contends "same time" does not mean "exact same moment in time." Verbatim Report of Proceedings at 20. It is undisputed that the two sales occurred at the same place.
The Court of Appeals commissioner upheld the finding of separate criminal conduct on the grounds that the transactions were not simultaneous. The commissioner reasoned that the plain language of the statute "requires simultaneous acts." Ruling Affirming Sentence at 3.
Several Court of Appeals decisions have rejected a simultaneity requirement. See State v. Calvert, 79 Wash.App. 569, 903 P.2d 1003 (1995), review denied, 129 Wash.2d 1005, 914 P.2d 65 (1996) (two check forgeries occurring at the same bank on the same day treated as same criminal conduct even though it was unknown whether the checks were forged at the same time); State v. Dolen, 83 Wash.App. 361, 365, 921 P.2d 590 (1996) (defendant's convictions for child rape and child molestation, which could not have *977 been committed at the same time, treated as same criminal conduct because the offenses were "continuous sexual behavior over a short period of time"); State v. Walden, 69 Wash.App. 183, 188, 847 P.2d 956 (1993) (defendant's act of fellatio on a child, constituting second degree rape, encompassed the same criminal conduct as the defendant's subsequent attempted anal intercourse with the same victim, constituting attempted second degree rape); but compare State v. Grantham, 84 Wash.App. 854, 932 P.2d 657 (1997) (multiple rapes against the same victim do not constitute same criminal conduct where other activities occurred between each rape and each rape was committed by a different means).
Although we have never directly addressed whether acts need to be simultaneous to meet the "same time" element of the statute, we implicitly held that simultaneity is not required in State v. Vike, 125 Wash.2d 407, 885 P.2d 824 (1994). In Vike, we discussed whether one crime must further the other in order to meet the "same criminal intent" element. See discussion below. We stated "the furtherance test lends itself to sequentially committed crimes. Its application to crimes occurring literally at the same time is limited." Vike, 125 Wash.2d at 412, 885 P.2d 824. It is clear from our endorsement of the furtherance test for sequential crimes that such crimes do qualify as "same criminal conduct," assuming the other statutory elements are met.
Porter's sequential drug sales occurred as closely in time as they could without being simultaneous. The sales were part of a continuous, uninterrupted sequence of conduct over a very short period of time. The officer never left the scene. Immediately after Porter gave the officer the methamphetamine, he asked her for marijuana. We hold that immediately sequential drug sales satisfy the "same time" element of the statute.
(1) Same criminal intent:
Porter must also prove that her criminal intent, viewed objectively, remained the same from one drug sale to the next. State v. Dunaway, 109 Wash.2d 207, 215, 743 P.2d 1237, 749 P.2d 160 (1987). The fact that the two charges involved different drugs does not, by itself, establish that Porter possessed a distinct criminal intent for each transaction. See State v. Garza-Villarreal, 123 Wash.2d 42, 49, 864 P.2d 1378 (1993).
Where two different substances are delivered or possessed simultaneously, we have held that a defendant possesses a singular criminal intent for both controlled substance violations. In the consolidated case, State v. Garza-Villarreal, we held defendant Garza-Villarreal's possession of the two substances, heroin and cocaine, with intent to deliver, constituted the same criminal conduct because the criminal objective for both offenses was "to deliver any controlled substance in the future." Garza-Villarreal, 123 Wash.2d at 49, 864 P.2d 1378 (emphasis added). We also held in Garza-Villarreal that defendant Casarez's delivery of cocaine and heroin "evidenced a single criminal objective of completing a drug deal.... Delivery of each drug furthered Casarez's single criminal objective of selling drugs in the present." 123 Wash.2d at 49, 864 P.2d 1378 (emphasis added).
However, where the defendant has the potential to commit distinct drug crimes in the present and in the future with the substances found, we have held that the defendant possesses a different criminal intent for each charge. For example, in State v. Maxfield, 125 Wash.2d 378, 886 P.2d 123 (1994), police searched the defendant's house and discovered a marijuana grow operation and a large quantity of dried, packaged marijuana contained in zip-lock bags. The defendant was charged with manufacture of an illegal substance and with possession with intent to deliver, and the trial court treated the two charges as separate criminal conduct. We affirmed, finding the defendant's grow operation showed a past and present intent to grow marijuana, while his possession of the packaged drug showed an intent to deliver marijuana in the future. Maxfield, 125 Wash.2d at 403, 886 P.2d 123.
Likewise in State v. Burns, 114 Wash.2d 314, 788 P.2d 531 (1990), a defendant sold cocaine to an undercover officer from a *978 parked van. The defendant was arrested while still in the van, and additional drugs were found in the vehicle. The defendant was charged with delivery for selling drugs to the officer and possession with intent to deliver the drugs found in the van. The large quantity of drugs in the van supported a finding that the defendant intended to sell drugs in the future, and this intent was distinct from the defendant's intent to sell drugs to the officer in the present. Burns, 114 Wash.2d at 319-20, 788 P.2d 531. The two charges thus constituted separate criminal conduct.
Unlike the defendants in Maxfield and Burns, Porter's criminal intent cannot be segregated into distinct present and future intents to commit criminal activity. Instead, her intent, objectively viewed, was to sell both drugs in the present as part of an ongoing transaction. Although the drugs were not sold simultaneously, as occurred in Garza-Villarreal, they were sold immediately back to back. This is the only real distinction between the facts of Porter and those of Garza-Villarreal.
The State argues, because the sales were sequential, Porter's criminal intent necessarily changed from one delivery to the next. The State intermingles the "same time" and "objective intent" elements in its analysis.
For authority, the State relies upon State v. Lewis, 115 Wash.2d 294, 797 P.2d 1141 (1990) and State v. Boze, 47 Wash.App. 477, 735 P.2d 696 (1987); but both Lewis and Boze are inapposite because both involved transactions occurring on different dates. In Lewis, an undercover officer purchased large amounts of marijuana from the defendant on three different dates at the same location. The defendant was charged with three counts of delivery and one count of attempted delivery, and the crimes were treated separately. We held the defendant's "acts were not part of a single criminal conduct because the commission of one drug deal did not further the commission of the other drug deals, and they were not part of a recognizable scheme or plan." State v. Lewis, 115 Wash.2d at 302, 797 P.2d 1141.
The Court of Appeals employed similar reasoning in State v. Henderson, 64 Wash. App. 339, 824 P.2d 492 (1992). In Henderson, an informant bought drugs from the defendant in a park, left the park to meet with officers, and returned within the same hour to make a second buy from the defendant. The court treated the two sales as separate criminal conduct: "Each sale was independently accomplished upon its completion. Nor was there a continuing sequence of conduct; a break of some significant time occurred between the first and second sales." Henderson, 64 Wash.App. at 344, 824 P.2d 492 (emphasis added). The court also held that the "earlier sale did not further the commission of the second sale and the sales were not part of a recognizable scheme or plan." Henderson, 64 Wash.App. at 344, 824 P.2d 492.
Unlike the drug sales in Henderson, Porter's sales occurred in a continuing, uninterrupted sequence of conduct as part of a recognizable scheme to sell drugs. The detective asked Porter for the methamphetamine and, immediately after its delivery, requested and received the marijuana.
For additional authority, the State relies upon a footnote in State v. Vike in which we stated, "Multiple transactions presuppose a change in criminal intent, objectively viewed." Vike, 125 Wash.2d at 411 n. 3, 885 P.2d 824 (citing State v. Garza-Villarreal, 123 Wash.2d 42, 49, 864 P.2d 1378 (1993)) (holding that simple possession of two different drugs qualifies as "same criminal conduct"). The Vike footnote, however, broadly reads dicta from Garza-Villarreal and is itself dicta in relation to the holding in Vike. The footnote is also completely unsupported by the other case law.
The sentencing court misapplied the three-part "same criminal conduct" test. Case law does not support the trial court's treatment of back-to-back, uninterrupted drug sales as separate criminal conduct merely because they were not "simultaneous." Furthermore, the evidence indicates that Porter's intent, objectively viewed, remained the same from one delivery to the next because the deliveries were part of a continuing, uninterrupted sequence of conduct.
We remand for resentencing.
*979 DURHAM, C.J., and SMITH, GUY, JOHNSON, MADSEN, ALEXANDER, TALMADGE and SANDERS, JJ., concur.