# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 68914-2-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| SANDOR RIVERA, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: January 13, 2014 |
| | ) | |

BECKER, J. — Sandor Rivera challenges the sentence imposed following his convictions for first degree assault, first degree robbery, first degree burglary, and intimidating a witness, all with deadly weapon enhancements. He argues that the assault, robbery, and burglary convictions constituted the same criminal conduct for purposes of calculating his offender score. Because the trial court did not abuse its discretion in counting the three convictions separately and because the arguments in Rivera's statement of additional grounds for review are without merit, we affirm.

## FACTS

On February 14, 2010, Gary Cook, a manager at Radio Shack in Federal Way, arrived to open the store for the day's business. He saw Sandor Rivera waiting outside the store. Rivera was wearing a Radio Shack uniform and an official company name tag. He told Cook that he was an employee at the Radio

Shack in Auburn and explained he was there for an "intracompany stock transfer," meaning that he would pick up some merchandise from the Federal Way store and transfer it to the Auburn store. Thinking Rivera was a legitimate employee on routine business, Cook unlocked the store, and Rivera followed him to the stockroom.

As Cook turned to open the security cage in the stockroom where high-end electronics were kept, Rivera struck Cook in the back of the head several times with a knife with a large blade. Cook fell to the floor and crawled as far away from Rivera as he could. He touched the back of his neck and felt bone; when he removed his hand it was covered in blood. Cook told Rivera that he would not fight back and that Rivera could take whatever he wanted from the stockroom. As Cook lay on the floor, Rivera took Cook's store keys, car keys, and cell phone. Cook explained to Rivera how to unlock the security cage. Cook heard Rivera taking things and putting them in plastic shopping bags.

Cook became concerned about the amount of blood he was losing and begged Rivera to hurry and finish so that he could get medical attention. Rivera went into the employee lunchroom and got an ice pack and some paper towels, which he gave to Cook. Rivera then left the stockroom and went into the main store area, where Cook could hear him tearing open packaging. Rivera soon returned to the stockroom and tied Cook up with zip ties he found in the store.

Rivera continued to take items from the stockroom. Rivera then left the stockroom again briefly, but returned and hit Cook two or three more times in the back of the head with the knife, using a downward chopping motion. Cook begged Rivera to stop, reiterating that he would not prevent Rivera from taking the merchandise. Rivera told Cook that he would stop hitting him and that "it'll all be over real quick." Cook thought Rivera was referring to the robbery, but Rivera then knelt on Cook's body and began poking a screwdriver into Cook's scalp wounds. Afraid Rivera meant to kill him, Cook managed to break out of the zip ties and knock the screwdriver from Rivera's hand.

Rivera then ordered Cook into the employee bathroom, where he took Cook's wallet. Rivera removed Cook's driver's license and told Cook that if Cook identified him to the police, Rivera would come to his home and kill his family. Rivera tied Cook up with a vacuum cleaner extension cord and put a plastic shopping bag over Cook's head, which he secured around Cook's neck with a zip tie. Rivera left the bathroom and was gone for a longer period of time than before, but returned and began hitting Cook in the back of the head again. Rivera admitted that he did not want to kill Cook but also did not want to leave a witness to the crime. Rivera then pressed the knife to Cook's throat. Cook attempted to push Rivera away as Rivera swung the knife at him, slashing at his head and cutting his ear. Rivera again promised he would stop hitting Cook if

Cook stayed in the bathroom for an hour to give Rivera time to escape. Cook stayed in the bathroom, counting the seconds, until he began experiencing confusion and was afraid that he would lose consciousness. Cook called out and, hearing no answer, determined that Rivera had left the store. Cook crawled to his office, called 911, and passed out.

The State charged Rivera with one count of first degree assault, one count of first degree robbery, one count of first degree burglary and one count of intimidating a witness, all with deadly weapon enhancements. The jury convicted Rivera as charged.

At sentencing, Rivera argued that all four convictions constituted the same criminal conduct and asked the court to count them as only one offense for the purposes of his offender score. The trial court disagreed:

> There doesn't seem to be a dispute as to whether or not of the three criteria that the Court must look at that the acts occurred at the same time and did occur in the same place, which was Radio Shack. I will find as to the Burglary charge that there were two victims, that was Mr. Cook as well as the business of Radio Shack.
> I am going to further find that the antimerger statute does apply as it relates to the facts in this case.
> I am going to find that there are differing intents as to the other charges. Looking at the charge of Burglary, if you will, there certainly was the intent to enter into the store; and the charge of Burglary in the First Degree once there was an assault. I will find that that intent was committed.
> The issue of Robbery, I will find that although he did enter and remain in the store, which this Court following the assault finds

-4-

is burglary, that there further was the intent to commit a Robbery with force. He did, in fact, turn his attention on Mr. Cook, took the keys to the cage, as well as took -- as well as the cell phone of Mr. Cook. He did so with the threatened use of violence, and he also did so with a deadly weapon.

As to the assault. Even after entering into the store and, if you will, robbing Mr. Cook, he continued to assault Mr. Cook. Indeed, he basically tortured Mr. Cook, causing great bodily harm. I am going to find that the attack or the torture, the cutting of the neck, the tapping the base of the skull, the placing of that bag around his head, indeed, was -- it was so far in excess of what was necessary in order to commit the burglary and the robbery, as well.

As to the intimidation of a witness. Finally, the defendant threatened both Mr. Cook's life as well as the life of his family; and that, indeed, and I think as the facts bear out here was successful to prevent Mr. Cook from telling the police exactly what happened. I will find that in so doing that the purpose was to thwart investigation or any subsequent prosecution.

Rivera appeals.

## DISCUSSION

## Same Criminal Conduct

Rivera argues that the trial court erred when it found that the convictions for burglary, robbery, and assault were not the same criminal conduct. Under the Sentencing Reform Act of 1981, an offender's sentence range for each conviction is ordinarily calculated by counting "all other current and prior convictions as if they were prior convictions for the purpose of the offender score." RCW 9.94A.589(1)(a). The act provides an exception to this general rule if the court finds that some or all of the current offenses encompass the same criminal conduct. RCW 9.94A.589(1)(a). Crimes constitute the same criminal

conduct when they "require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.589(1)(a). Unless all three of these elements are present, the offenses do not constitute the same criminal conduct and must be counted separately in calculating the offender score. State v. Porter, 133 Wn.2d 177, 181, 942 P.2d 974 (1997). "The statute is generally construed narrowly to disallow most claims that multiple offenses constitute the same criminal act." Porter, 133 Wn.2d at 181.

We review the trial court's determination of what constitutes the same criminal conduct for an abuse of discretion or misapplication of the law. State v. Graciano, 176 Wn.2d 531, 537, 295 P.3d 219 (2013). "Under this standard, when the record supports only one conclusion on whether crimes constitute the 'same criminal conduct,' a sentencing court abuses its discretion in arriving at a contrary result." Graciano, 176 Wn.2d at 537-38. "But where the record adequately supports either conclusion, the matter lies in the court's discretion." Graciano, 176 Wn.2d at 538. A trial court abuses its discretion if it makes a manifestly unreasonable decision based on untenable grounds or for untenable reasons. State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

A person is guilty of first degree burglary if he or she enters or remains unlawfully in a building with intent to commit a crime against a person or property therein, and he or she is armed with a deadly weapon or assaults any person inside. RCW 9A.52.020. A person commits first degree robbery, as charged

here, by unlawfully taking property from another person against that person's will by the use or threatened use of force, violence, or fear of injury, and if he is armed with a deadly weapon or inflicts bodily injury. RCW 9A.56.190, .200(1)(a). A person is guilty of first degree assault, as charged here, if he or she assaults another and inflicts great bodily harm or assaults another with a deadly weapon likely to produce great bodily harm. RCW 9A.36.011(a), (c).

The trial court did not abuse its discretion in counting the burglary separately from the assault and the robbery because the crimes did not involve the same victims. Cook was the victim of the assault and the robbery. However, both Cook and Radio Shack were victims of the burglary. The burglary was therefore not the same criminal conduct as the assault and the robbery.

The trial court furthermore did not err in counting the assault and the robbery separately from each other because they did not share the same criminal intent. Whether two crimes share the same criminal intent depends on "'the extent to which the criminal intent, objectively viewed, changed from one crime to the next. . . . This, in turn, can be measured in part by whether one crime furthered the other.'" State v. Williams, 135 Wn.2d 365, 368, 957 P.2d 216 (1998) (alteration in original), quoting State v. Vike, 125 Wn.2d 407, 411, 885 P.2d 824 (1994). Here, Rivera assaulted Cook the first time in order to secure Cook's compliance to the robbery. Cook told Rivera that he would not fight back and Rivera was free to take whatever merchandise he wanted. Despite the fact

that Rivera did not need further force to commit the robbery, he continued to assault Cook. On at least three separate occasions after the initial assault, Rivera left Cook alone and then returned to commit further violence: hitting Cook again with the knife, poking a screwdriver into Cook's wounds, and slashing at Cook's head and ear with the knife. As the trial court appropriately found, these assaults were "far in excess of what was necessary in order to commit the burglary and the robbery."

## Statement of Additional Grounds

Pursuant to RAP 10.10, Rivera raises several additional grounds for review.

Rivera contends that the State committed misconduct by: (1) offering perjured testimony, (2) purposefully misstating his testimony in closing argument, (3) referring to him as "sick and twisted," and (4) asserting that he tailored his testimony. To prevail on a claim of prosecutorial misconduct, Rivera must show both improper conduct and prejudicial effect. State v. Roberts, 142 Wn.2d 471, 533, 14 P.3d 713 (2000). Where, as here, a defendant failed to object, move for mistrial, or request a curative instruction, review is appropriate only if the prosecutorial misconduct is "so flagrant and ill intentioned" that no curative instruction could have obviated the prejudice engendered by the misconduct. State v. Emery, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012). This court views a prosecutor's allegedly improper comments in the context of the total argument,

the issues in the case, the evidence addressed in the argument, and the jury instructions given. State v. Dhaliwal, 150 Wn.2d 559, 578, 79 P.3d 432 (2003). Under this standard of review, Rivera's claims are without merit.

First, Rivera claims that the State failed to correct an inconsistency in the testimony of Michael Ranetta, a fellow inmate to whom Rivera made incriminating statements. But a review of the testimony to which Rivera cites shows that there was no inconsistency.

Next, Rivera claims the State intentionally misrepresented facts when the deputy prosecutor in closing argument characterized Rivera's attitude towards the crime as, "I'm going to stop. I'm sorry. Actually, I'm not, slash. I'm going to stop. I'm going to leave. I'm sorry. Wait. I lied." But the prosecutor did not attribute these statements to Rivera. Rather, the prosecutor was arguing that Rivera was guilty of intimidating a witness because he deliberately terrified Cook so that Cook would not report the crime to the police. Defense counsel clarified to the jury that these were not direct statements made by Rivera. Rivera fails to establish that the statements were prejudicial or any prejudice was not cured by defense counsel's clarification.

Rivera claims that the prosecutor committed misconduct by referring to him and his actions as "sick and twisted" during closing argument. While the prosecutor's remarks are not well taken, there was not a substantial likelihood that those remarks affected the jury's verdict, particularly given the fact that

defense counsel reiterated the "sick and twisted" language several times to argue that Rivera committed his crimes under duress, not out of malice.

Rivera's final theory of misconduct is that the prosecutor improperly cross-examined him as to whether he had tailored his testimony to match the police report and argued that he had "practiced and rehearsed" his story. But a prosecutor is not prohibited "from indicating, via questioning, that a defendant has tailored his or her testimony to align with witness statements, police reports, and testimony from other witnesses at trial." State v. Martin, 171 Wn.2d 521, 533, 252 P.3d 872 (2011).

Rivera argues that the trial court erred in admitting several photographs that he alleges were unduly prejudicial. But the photographs Rivera challenges are not part of the record on review, and thus we cannot consider this claim of error on direct appeal. State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

Rivera contends that the trial court demonstrated bias against him at sentencing by stating that she was "extremely disturbed" by the testimony and that what had happened to Cook was "an absolute nightmare." To the extent that Rivera argues that the trial court's remarks violated the appearance of fairness doctrine, Rivera must show evidence of the trial court's actual or potential bias. State v. Post, 118 Wn.2d 596, 619 n.8, 826 P.2d 172, 837 P.2d 599 (1992). These comments do not show bias but rather were part of the trial court's

explanation for why Rivera's crimes warranted the high end of the standard range.

Rivera contends that his convictions for first degree assault and first degree robbery violate double jeopardy because the assault conviction should merge into the robbery conviction. Although there are several methods to determine the existence of a double jeopardy violation, Rivera argues only that the merger doctrine applies, and thus we focus solely on that analysis. Under the merger doctrine, when the degree of one offense is raised by conduct separately criminalized by the legislature, we presume the legislature intended to punish both offenses through a greater sentence for the greater crime. State v. Vladovic, 99 Wn.2d 413, 419, 662 P.2d 853 (1983). However, the legislature did not intend that first degree assault merge into first degree robbery. State v. Freeman, 153 Wn.2d 765, 778, 108 P.3d 753 (2005). Consequently, Rivera's convictions do not merge.

Finally, Rivera claims that he was entitled to a unanimity instruction with respect to which act of assault formed the basis for the assault conviction and which act of assault elevated the degree of the robbery conviction. But here, the State charged two alternative means of committing first degree robbery—that Rivera inflicted bodily injury and that he used a deadly weapon—and the jury was instructed on both means. Where a defendant is charged with committing a crime by alternative means, unanimity is not required as to which alternative

jurors rely upon so long as the State presents sufficient evidence to support each alternative. State v. Randhawa, 133 Wn.2d 67, 73-74, 941 P.2d 661 (1997). Rivera does not argue that the evidence was insufficient to support either of the alternative means of committing first degree robbery. As a result, the jury instructions were proper.

Affirmed.

Becker, J.

WE CONCUR:

Leach, C.J.