# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondent,<br><br>v.<br><br>EDWARD JUNIOR PINKNEY III,<br><br>               Appellant. | No. 80635-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: January 21, 2020 |

LEACH, J. — A jury convicted Edward Pinkney of two counts of second degree assault, harassment, third degree theft, third degree malicious mischief, and interfering with domestic violence reporting following an altercation between Pinkney and his girlfriend, Sharon Smith. Pinkney contends that the two assault convictions violate double jeopardy and that the assault and harassment convictions should have been considered as the same criminal conduct for sentencing purposes. We remand to strike the criminal filing fee and the DNA (deoxyribonucleic acid) collection fee and to correct a clerical error in the judgment and sentence. In all other regards, we affirm.

## FACTS

Pinkney and Smith began a dating relationship in January 2017. During the relationship, Pinkney called Smith disrespectful names and frequently threatened to hit her. Smith described Pinkney as "rough" and "controlling."

On July 15, 2017, Pinkney and Smith ran errands together. According to Smith, Pinkney "started drinking before he got up that morning." On the bus, Pinkney called Smith names and shoved her in the back, causing her to stumble.

After returning to Smith's apartment around 4:30 p.m., Pinkney drank a six-pack of beer and a bottle of vodka. As he drank, Pinkney became paranoid that Smith was going to call the police and have him arrested. At some point, Pinkney cut the cord to Smith's landline telephone.

Later that evening, police officers arrived at Smith's apartment complex for an unrelated matter. Pinkney said, "Oh, you called the police on me, bitch." Both Smith and Pinkney went outside. Smith approached Officer Jordan Reisher and said quickly, in a hushed voice, "He's torturing me." Smith had her head down and looked concerned. Officer Reisher asked Smith if she wanted him to help her. Smith declined help and told Officer Reisher, "Just play it off like I didn't tell you anything." Officer Reisher asked Smith again if she needed help, and she said, "Just forget I said anything." Smith and Pinkney returned to her apartment together. Pinkney told Smith "he could do anything he wanted to do" and that police officers "would never help [her]".

-2-

Smith went into the bedroom and called 911. However, she hung up because she was scared Pinkney would catch her. When the 911 dispatcher called back, Smith said, "Don't call back." Pinkney came into the bedroom and said, "Bitch, you calling the police on me?" Smith insisted she had not because her cell phone battery was dead.

Pinkney said, "Bitch, I'm going to give you something to cry for." Smith testified she was frightened by Pinkney's expression and knew "he was going to do something to [her]." Pinkney grabbed Smith around the neck with both hands and squeezed. He told her, "Bitch, I'll kill you and your mom and spend the rest of my life in prison." Pinkney pushed Smith into a sliding closet door, knocking it loose and denting a trash can. Smith tried to tell Pinkney to stop but could not breathe. Pinkney let go and pushed Smith onto the bed. Pinkney then left the room.

Smith curled up on the bed, "crying and begging for god and asking [Pinkney] to leave." Pinkney came back into the bedroom and said, "You going to need god." Smith got up, and Pinkney again put his hands around her neck and squeezed. He said, "I told you bitch I will kill you." Smith described Pinkney's demeanor as more serious than the first time, "[l]ike he would do it, you know." Smith testified that the second incident lasted approximately 10 to 15 seconds, longer than the first incident. She said the second incident was worse because Pinkney squeezed tighter and she had more difficulty breathing. Pinkney eventually let go and left the room again.

Smith ran out of the bedroom, grabbed a baseball bat near the front door, and fled through the apartment's front door. Pinkney came out of the apartment, holding Smith's cell phone, and called out to Smith, "Yeah, bitch. I got your phone." Smith ran back into the apartment, locked the door behind her, and called 911. She told the 911 dispatcher that Pinkney choked her and she had bruises on her neck. The 911 dispatcher told Smith that police officers were on the way. Smith said, "I got a bat. I'm not worried about him. . . . He's trying to get away."

Officer Brenda Anderson responded to Smith's apartment. Smith was disheveled, flustered, and crying. Smith described two separate incidents in which Pinkney put his hands around her neck. Smith also told Officer Anderson that Pinkney made threats to kill her and her family. Officer Anderson noted some redness on Smith's neck and chest and bruises on Smith's arm and hip.

The State charged Pinkney with two counts of second degree assault, harassment, third degree theft, third degree malicious mischief, and interfering with domestic violence reporting. The State alleged that all of the charges were crimes of domestic violence and further alleged the aggravating circumstances of an ongoing pattern of abuse and recent release from incarceration.

A jury convicted Pinkney as charged. At sentencing, Pinkney argued that the two assault convictions subjected him to double jeopardy. Pinkney also claimed that the assault and harassment convictions constituted the same criminal conduct for this purpose of calculating his offender score. The court

rejected both arguments. The court imposed an exceptional sentence based on the rapid recidivism aggravating factor. Pinkney appeals.

ANALYSIS

Pinkney contends that his two assault convictions violate double jeopardy because they constituted a single course of conduct. We disagree.

Both the state and federal constitutions prohibit a court from enforcing multiple punishments against the same individual for the same offense.[1] We review alleged double jeopardy violations de novo.[2]

Assault is a course of conduct crime, which "helps to avoid the risk of a defendant being 'convicted for every punch thrown in a fistfight.'"[3] "There is no bright-line rule for when multiple assaultive acts constitute one course of conduct."[4] The factors to consider in making this determination include (1) the length of time over which the assaults took place, (2) whether the assaults took place in the same location, (3) the defendant's intent or motivation for the different assaultive acts, (4) whether the assault were uninterrupted or whether there were any intervening acts or events, and (5) whether there was an opportunity for the defendant to reconsider his or her actions.[5] No single factor is

---

[1] U.S. CONST. amend. V; WASH. CONST. art. I, § 9; State v. Calle, 125 Wn.2d 769, 772, 888 P.2d 155 (1995).

[2] State v. Freeman, 153 Wn.2d 765, 770, 108 P.3d 753 (2005).

[3] State v. Villanueva-Gonzalez, 180 Wn.2d 975, 984-85, 329 P.3d 78 (2014) (quoting State v. Tili, 139 Wn.2d 107, 116, 985 P.2d 365 (1999)).

[4] Villanueva-Gonzalez, 180 Wn.2d at 985.

[5] Villanueva-Gonzalez, 180 Wn.2d at 985.

dispositive, and "the ultimate determination should depend on the totality of the circumstances, not a mechanical balancing of the various factors."[6]

Pinkney compares this case to State v. Villanueva-Gonzalez,[7] in which the defendant head-butted his girlfriend, breaking her nose, and then grabbed her by the neck. A jury convicted the defendant of two separate counts of assault.[8] The Washington Supreme Court held the convictions violated double jeopardy because the assaults took place in the same location over a short time period and because there were no intervening events or an opportunity for the defendant to reconsider his actions.[9]

We distinguish Villanueva-Gonzalez. Here, both assaults occurred in the same location: Smith's bedroom. And while Smith did not testify how much time elapsed between the first and the second assault, the record implies they took place over a short time period. But, in contrast to Villanueva-Gonzalez, Pinkney left the bedroom between the first and the second assault. He only returned to the bedroom a second time after hearing Smith praying and crying. This demonstrates that Pinkney stopped assaulting Smith, had the opportunity to reconsider his actions, and made the decision to assault her again. Moreover, Pinkney had a different motive for each assault. The first time, Pinkney was angry at Smith because he believed she had called the police. The second time,

---

[6] Villanueva-Gonzalez, 180 Wn.2d at 985.
[7] 180 Wn.2d 975, 978, 329 P.3d 78 (2014).
[8] Villanueva-Gonzales, 180 Wn.2d at 979.
[9] Villanueva-Gonzales, 180 Wn.2d at 986.

Pinkney was angry because Smith was crying and begging him to leave her apartment. Finally, Smith testified that Pinkney's intent during the second assault appeared different than the first assault. She stated that the second time, Pinkney seemed more serious and determined to cause her harm. Considering the totality of the circumstances, we conclude that Pinkney's two assault convictions did not violate double jeopardy.[10]

Pinkney argues that even if his convictions do not violate double jeopardy, the court should have calculated his offender score as if the assault and harassment convictions were the same criminal conduct.

"Whenever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score" unless they involve the "same criminal conduct."[11] Multiple convictions constitute the same criminal conduct if they "require the same criminal intent, are committed at the same time and place, and involve the same victim."[12] If any of these elements is missing, the convictions are not the

[10] Pinkney also cites as persuasive authority an unpublished decision of Division Two, State v. Carpenter, No. 43878-0-II, (Wash. Ct. App. Aug. 18, 2015) (unpublished), http://www.courts.wa.gov/opinions/pdf/438780.pdf. In Carpenter, the defendant assaulted his girlfriend several times in the same room over the course of an evening. But Carpenter is also distinguishable. There, the defendant's intent and motivation remained the same throughout the assaults. Moreover, while there were interruptions in the form of other witnesses attempting to intervene, the defendant himself never left the room or reconsidered his actions. Carpenter, slip op. at 3-4.
[11] RCW 9.94A.589(1)(a).
[12] RCW 9.94A.589(1)(a).

same criminal conduct.[13] We construe the requirements of RCW 9.94A.589(1)(a) narrowly "to disallow most claims that multiple offenses constitute the same criminal act."[14] We review a trial court's determination on the issue for an abuse of discretion or misapplication of the law.[15]

Here, the trial court calculated Pinkney's offender score as 18 on the assault convictions and 17 on the harassment conviction. A trial court's failure to properly treat both crimes as the same criminal conduct is harmless if the defendant's offender score already exceeds 9.[16] Even if the trial court considered Pinkney's convictions as the same criminal conduct, Pinkney's standard range would remain the same.[17] Any error was harmless.[18]

Pinkney challenges the criminal filing fee and DNA collection fee imposed as part of his sentence. Pinkney contends, and the State concedes, that both fees must be stricken because he is indigent and because his DNA was collected following a prior felony conviction. Although these fees were mandatory when

---

[13] State v. Lessley, 118 Wn.2d 773, 778, 827 P.2d 996 (1992).

[14] State v. Porter, 133 Wn.2d 177, 181, 942 P.2d 974 (1997).

[15] Tili, 139 Wn.2d at 122.

[16] State v. Bobenhouse, 166 Wn.2d 881, 896-97, 214 P.3d 907 (2009).

[17] The trial court declined the State's request to impose an exceptional sentence based on the "free crimes" aggravating factor of RCW 9.94A.535(2)(c).

[18] Citing RCW 9.94A.525(5)(a)(i), Pinkney contends that he nevertheless is entitled to review of his same criminal conduct claim because "a future sentencing court would be bound by the current sentencing court's same criminal conduct determination." But Pinkney misstates the law. A prior court's determination that convictions are the same criminal conduct is binding on future courts. RCW 9.94A.525(5)(a)(i). But a determination that convictions are not the same criminal conduct, as here, is not binding. RCW 94A.525(5)(a)(i); State v. Johnson, 180 Wn. App. 92, 101, 320 P.3d 197 (2014).

imposed, the Washington Supreme Court has since held in State v. Ramirez[19] that courts may not impose discretionary legal financial obligations on an indigent criminal defendant. We accept the State's concession and remand for the trial court to strike these fees from the judgment and sentence. Pinkney also notes that the judgment and sentence incorrectly lists a conviction for a second count of felony harassment instead of the conviction for interfering with domestic violence reporting. On remand, the trial court shall correct the error.

In a statement of additional grounds, Pinkney challenges the sufficiency of the evidence supporting the assault convictions. Pinkney argues that Smith had no hemorrhaging or bruises on her neck and admitted she was not afraid of him.

Sufficient evidence supports a conviction if, after viewing the evidence in the light most favorable to the State, it allows any rational trier of fact to find all of the elements of the crime charged beyond a reasonable doubt.[20] A defendant claiming insufficiency of the evidence admits the truth of the State's evidence and all inferences that can reasonably be drawn from that evidence.[21] When reviewing the sufficiency of the State's evidence, we consider circumstantial evidence and direct evidence as equally reliable.[22] We defer to the trier of fact on issues of conflicting witness testimony, witness credibility, and the

---

[19] 191 Wn.2d 732, 746-50, 426 P.3d 714 (2018).
[20] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).
[21] Salinas, 119 Wn.2d at 201.
[22] State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

persuasiveness of the evidence.[23] The sufficiency of the evidence is a question of constitutional law that we review de novo.[24]

As charged here, a person is guilty of second degree assault if he or she "[a]ssaults another by strangulation or suffocation."[25] RCW 9A.04.110(26) defines "strangulation" as "to compress a person's neck, thereby obstructing the person's blood flow or ability to breathe, or doing so with the intent to obstruct the person's blood flow or ability to breathe."

The record contains sufficient evidence that Pinkney assaulted Smith. Smith testified that Pinkney put his hands around her neck and squeezed. She also testified that she was unable to breathe while he was doing so. While Pinkney denies that any of these things happened, we do not review a jury's credibility determinations.

We affirm Pinkney's convictions. We remand for the trial court to strike the criminal filing fee and DNA collection fee from the judgment and sentence and to correct the clerical error.

_Leach, J._

WE CONCUR:

_Mann, A.J._          _Appelwick, C.J._

---

[23] State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).
[24] State v. Berg, 181 Wn.2d 857, 867, 337 P.3d 310 (2014).
[25] RCW 9A.36.021(1)(g).