## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51788-4-II |
| Respondent, | |
| v. | |
| KYLE ALEXANDER SMITH, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, J. — Kyle Alexander Smith sold three junk cars to Skylar Askay for $400. Two of the cars were owned by Donald Guy and the third car was owned by Donald's son, Maxwell Guy.[1] Smith did not have permission to sell the cars. As part of the sale, Smith signed Donald's name on three Department of Licensing affidavit of loss/release of interest documents.

The State charged Smith with three counts of motor vehicle theft, three counts of forgery, and one count of trafficking in stolen property. A jury found Smith not guilty of the three counts of motor vehicle theft, but it found him guilty of three counts of the lesser-included offense of third degree theft. The jury also found Smith guilty of the three counts of forgery and one count of trafficking in stolen property.

At sentencing, the trial court found that the two third degree theft convictions that were related to the cars that Donald owned were the same offense for double jeopardy purposes. The court therefore dismissed one of Smith's third degree theft convictions. The trial court also found

---

[1] Because Donald Guy and Maxwell Guy share the same last name, we use their first names for clarity.

that the two convictions for forgery that were related to Donald's cars were the same criminal conduct for sentencing purposes. The trial court rejected Smith's argument that the forgery and trafficking in stolen property convictions encompassed the same criminal conduct.

Smith appeals from his sentence, asserting that the trial court erred by failing to find that his forgery and trafficking in stolen property convictions encompassed the same criminal conduct. Smith also requests that we remand to the trial court to correct a scrivener's error on his judgment and sentence that incorrectly lists his offender score as eight. Smith also contends that certain legal financial obligations must be stricken from his judgment and sentence.

We conclude that the trial court did not abuse its discretion when it found that Smith's forgery and trafficking in stolen property convictions did not encompass the same criminal conduct. We affirm the trial court's calculation of Smith's offender score. We accept the State's concession that Smith's judgment and sentence contains a scrivener's error and remand for a correction of that error consistent with this opinion. We also accept the State's concession that the trial court improperly imposed a criminal filing fee, witness costs, sheriff service fees, and the jury demand fees as part of Smith's legal financial obligations and direct the trial court to strike these fees and costs on remand. Finally, on remand, the trial court is also directed to strike Smith's DNA collection fee unless the State can show that his DNA has not been previously collected as a result of a prior conviction.

## FACTS

Donald owns property in Shelton where he stores junk cars, mobile homes, and camping trailers. Donald befriended Smith, and the two men often worked on cars together. Smith agreed to go to Donald's property from time to time to keep an eye out for theft and vandalism.

2

Smith asked his wife to place an advertisement on Craigslist offering to sell some of the cars and parts on Donald's property. Skylar Askay and Jean Fosnaugh are in a Subaru automobile club where members swap parts and help each other rebuild cars. Askay responded to the Craigslist advertisement.

Three days later, Askay and Fosnaugh met with Smith and went to Donald's property to view the vehicles. Smith told Askay that he had permission to sell the cars and car parts for Donald to help Donald pay Smith for work he had done for him. Askay and Fosnaugh walked around the property and looked at the cars for a few hours before going home.

The next day, Askay sent a text message to Smith telling Smith which cars he wanted to purchase. The following weekend, Askay and Fosnaugh met Smith at Donald's property. Askay offered Smith $400 for a 1978 Subaru wagon, a 1980 Subaru Brat, and a 1987 Subaru RX. Smith accepted the offer, and Askay gave him $400 in cash.

Askay asked Smith for paperwork releasing the owner's interest in the cars to him. Smith told Askay that he would get the paperwork from Donald. Smith left the property for a couple hours while Askay and Fosnaugh worked on making the cars movable so they could place them on a trailer to haul them away. When Smith returned, he gave Askay three Department of Licensing affidavit of loss/release of interest documents. The signatures on each affidavit bore the name "Donald A. Guy." Exs. 1-3. Askay filled in the vehicle information on each affidavit.

Askay and Fosnaugh spent the next few days working on the cars to move them from Donald's property. They removed the 1980 Brat and 1987 RX from of the property. They also dug the 1978 wagon out from where it had been wedged between trees and moved it near the property entrance so they could pick it up later. Before they could pick up the wagon, the Mason

County sheriff's office contacted Askay and told him that he needed to return the vehicles to the property. Askay returned the vehicles and identified Smith to law enforcement as the person who had sold the vehicles to him. Smith had not obtained permission from Donald or Maxwell to sell the cars.

The State charged Smith with three counts of motor vehicle theft, three counts of forgery, and one count of first degree trafficking in stolen property. The matter proceeded to a jury trial where witnesses testified consistently with the facts above.

Donald testified that he owned the 1980 Brat and 1978 wagon and that his son, Maxwell, owned the 1987 RX. Donald said that he did not give Smith permission to sell the vehicles, he did not sign the Department of Licensing affidavits, and Smith did not give him any money from the sale of the vehicles.

Smith testified that Donald gave him permission to sell parts from some of his cars but not the cars themselves. Smith said that his wife mistakenly placed an advertisement offering to sell the cars. Smith said that he told Askay and Fosnaugh that only parts from some of the cars were for sale and that parts from the 1987 RX and 1978 wagon were not for sale. According to Smith, he told Askay and Fosnaugh to pull the parts they wanted, he would trust them not to steal anything, and to contact him when they were done. Smith said that he met them at a tavern later that afternoon and agreed to take $400 for the parts they took after checking that their truck did not contain any other parts. Smith stated that he did not see Askay and Fosnaugh again.

Smith said he did not know that Askay and Fosnaugh returned to the property to haul away the cars, and he denied providing Askay with the Department of Licensing affidavits. Smith said that, after receiving $400 for the car parts, he went to a store with Donald to purchase $300 in

products that Donald needed for a project. Donald told him to keep the remainder of the money from the sale of the cars.

The jury returned verdicts finding Smith not guilty of the three counts of motor vehicle theft but finding him guilty of the lesser-included offenses of third degree theft. The jury also returned verdicts finding Smith guilty of all three counts of forgery and one count of first degree trafficking in stolen property.

At sentencing, Smith argued that his three third degree theft convictions were one unit of prosecution and moved to dismiss two of the convictions to avoid a double jeopardy violation. The trial court found that the two third degree theft convictions related to Donald's 1980 Brat and 1978 wagon were the same offense and dismissed one count of third degree theft. But the court did not dismiss the remaining theft conviction because Maxwell was the victim of that theft.

Smith also argued at sentencing that his three forgery convictions and his first degree trafficking in stolen property conviction were the same criminal conduct for purposes of calculating his offender score. The trial court found that the two forgery convictions related to Donald's vehicles were the same criminal conduct but that the forgery related to Maxwell's vehicle was not. The trial court also found that the trafficking in stolen property conviction was not the same criminal conduct as any of the forgery convictions because the intent necessary to commit each crime was different. Forgery required an intent to injure or defraud while trafficking in stolen property required an intent to sell or otherwise dispose of the property of another person.

Based on the trial court's same criminal conduct findings, the parties agreed that Smith had an offender score of seven, and the trial court imposed a sentence within the standard range for that offender score. Although the parties agreed that Smith's offender score was seven and the

trial court sentenced him within the standard range for an offender score of seven, his judgment and sentence reflects an offender score of eight. Clerk's Papers (CP) at 117.

The trial court found that Smith had an ability to work after being released from incarceration and imposed legal financial obligations that included a $200.00 criminal filing fee, $373.97 for witness costs, $1,120.00 in sheriff service fees, a $250.00 jury demand fee, and a $100.00 DNA collection fee. The trial court found Smith indigent for purposes of appeal. Smith appeals his sentence.

## ANALYSIS

### I. SAME CRIMINAL CONDUCT

Smith contends that the trial court abused its discretion when it declined to find that his three forgery convictions and his trafficking in stolen property conviction all encompassed the same criminal conduct. In the alternative, Smith contends that the trial court abused its discretion when it declined to find that his trafficking in stolen property conviction encompassed the same criminal conduct as his forgery convictions that were related to Donald's vehicles and also separately encompassed the same criminal conduct as his forgery conviction related to Maxwell's vehicle. We disagree and conclude that the trial court acted within its discretion when it found that Smith's challenged offenses did not encompass the same criminal conduct.

RCW 9.94A.589(1)(a) provides that "if the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime." Offenses encompass the same criminal conduct when they "require the same criminal intent, are committed at the same time and place, and involve the same victim." *Id*. The absence of any of these elements precludes a same criminal conduct finding. *State v.*

6

*Porter*, 133 Wn.2d 177, 181, 942 P.2d 974 (1997). The defendant bears the burden of proving that offenses encompass the same criminal conduct. *State v. Aldana Graciano*, 176 Wn.2d 531, 539, 295 P.3d 219 (2013). The statute presumes separate criminal conduct, and its proviso is generally construed narrowly, disfavoring claims of same criminal conduct. *Porter*, 133 Wn.2d at 181.

We review a trial court's same criminal conduct finding for abuse of discretion or misapplication of law. *Aldana Graciano*, 176 Wn.2d at 537. "Under this standard, when the record supports only one conclusion on whether crimes constitute the 'same criminal conduct,' a sentencing court abuses its discretion in arriving at a contrary result. But where the record adequately supports either conclusion, the matter lies in the court's discretion." *Id.* at 537-38 (citation omitted).

The parties agreed that Smith's crimes for forgery and trafficking in stolen property were all committed at the same time and place. Accordingly, we address whether the crimes shared the same victims and objective intent.

Smith argues that the same victim element is met here because his crimes of forgery and trafficking in stolen property all involved the "same set of victims," Askay, Donald, and Maxwell. Br. of Appellant at 13. We disagree. Former RCW 9.94A.030(54) (2015) defined "victim" as "any person who has sustained emotional, psychological, physical, or financial injury to person or property as a direct result of the crime charged." In *State v. Walker*, 143 Wn. App. 880, 891, 181 P.3d 31 (2008), we recognized that the victim of trafficking in stolen property is the person who purchased the stolen property. Here, as the purchaser of stolen property, only Askay was a victim of Smith's trafficking in stolen property offense.

In contrast, Askay, Donald, and Maxwell were all victims of Smith's forgery offenses. Askay was a victim of these offenses because he received the forged affidavits believing that Donald had signed them and had released his interest in the property. Maxwell was a victim because one of the forged affidavits purported to release ownership of his 1987 RX. Donald was a victim because his name was forged on all three affidavits and because the affidavits purported to release his interest in the 1980 Brat and 1978 wagon. Because Smith's forgery offenses had victims that were not victims of his trafficking in stolen property offense, the trial court properly found that the crimes did not encompass the same criminal conduct. *See State v. Davis*, 90 Wn. App. 776, 782, 954 P.2d 325 (1998) (offenses do not encompass the same criminal conduct when both offenses share an identical victim but one offense had at least one additional victim).

When comparing Smith's three forgery offenses with each other, it is also clear that Maxwell was not a victim of the two forgery convictions relating to cars belonging to Donald. Because the forgery offense related to Maxwell's 1987 RX had Maxwell as a victim whereas the two remaining forgery convictions relating to Donald's cars did not, the trial court did not abuse its discretion.

We affirm the trial court's determinations with regard to same criminal conduct. Because Smith's challenged offenses do not satisfy the same victim element of the same criminal conduct analysis, we do not address whether the offenses shared the same objective intent.

## II. SCRIVENER'S ERROR

Smith next contends that his judgment and sentence contains a scrivener's error incorrectly listing his offender score at eight when it should list his offender score at seven. The State agrees that Smith's correct offender score is seven and agrees the error should be corrected.

A scrivener's error is one that, when amended, would correctly convey the intention of the trial court, as expressed in the record at trial. *State v. Davis*, 160 Wn. App. 471, 478, 248 P.3d 121 (2011); *see also Presidential Estates Apt. Assocs. v. Barrett*, 129 Wn.2d 320, 326, 917 P.2d 100 (1996). The remedy for a scrivener's error in a judgment and sentence is to remand to the trial court for correction. *State v. Makekau*, 194 Wn. App. 407, 421, 378 P.3d 577 (2016); CrR 7.8(a).

The trial court calculated Smith's offender score as seven based on its same criminal conduct analysis, and it sentenced Smith within the standard range for that offender score. RCW 9.94A.510. But Smith's judgment and sentence incorrectly lists his offender score as eight. We accept the parties' agreement that this is a scrivener's error and direct the trial court to correct the error on remand.

### III. LEGAL FINANCIAL OBLIGATIONS

Finally, Smith contends that we must remand to the trial court to strike certain legal financial obligations from his judgment and sentence, specifically a $200.00 criminal filing fee, $373.97 in witness costs, $1,120.00 in sheriff service fees, a $250.00 jury demand fee, and a $100.00 DNA collection fee. The State concedes that the criminal filing fee, witness costs, sheriff service fees, and the jury demand fee are improper under recent legislative amendments and *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018). Br. of Resp't at 8-9. We accept the State's concession and remand to the trial court to strike these fees and costs from Smith's judgment and sentence.

The State argues that we should deny Smith relief from the $100 DNA collection fee because the record does not definitively show that his DNA has been previously collected as a result of a prior conviction. We disagree. In 2018, the legislature amended RCW 43.43.7541 to

authorize the imposition of a DNA fee only if the State has not "previously collected the offender's DNA as a result of a prior conviction." LAWS OF 2018, ch. 269, § 18. RCW 43.43.754(1)(a) requires the State to collect a DNA sample from every adult or juvenile convicted of a felony. Because Smith has prior felony convictions in Washington, there is a presumption that the State has previously collected his DNA as statutorily required. *State v. Houck*, 9 Wn. App. 2d 636, 651 n.4, 446 P.3d 646 (2019). But because the record is silent as to whether Smith's DNA has been previously collected, we remand for the trial court to make this determination. On remand, the State bears the burden of showing that Smith's DNA has not been previously collected as a result of a prior conviction, and the trial court on remand must strike the DNA collection fee unless the State meets its burden. *Id.* at 651.

## CONCLUSION

We affirm the trial court's calculation of Smith's offender score based on its same criminal conduct determination but remand to the trial court to correct the scrivener's error incorrectly listing Smith's offender score as eight. On remand, the court must strike Smith's criminal filing fee, witness costs, sheriff service fees, and the jury demand fees. The trial court shall also strike Smith's DNA collection fee unless the State can show that his DNA has not been previously collected as a result of a prior conviction.

No. 51788-4-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

Sutton, P.J.

Cruser, J.